STATE OF NORTH CAROLINA v. ELI NAIN OCASIO

No. 316A95

(Filed 11 October 1996)

### 1. Homicide § 283 (NCI4th)— felony murder—kidnapping—acting in concert—intent—evidence sufficient

The trial court did not err in a noncapital prosecution for first-degree murder by denying defendant's motions to dismiss charges of first-degree murder, second-degree burglary, larceny, kidnapping, larceny of a motor vehicle, breaking and entering, and safecracking where defendant contended that the evidence was insufficient to show that he possessed the requisite intent. The evidence showed that defendant agreed to commit the crimes with three others and suggested to another that he could participate in the planned robbery, defendant told that person that the victims would be killed if either saw their faces, and defendant stood guard over the victims. Defendant was convicted of two counts of first-degree murder solely on the basis of felony murder with the underlying felonies being kidnapping; the evidence was clearly sufficient to show that defendant acted in concert in committing these offenses.

**Am Jur 2d, Conspiracy §§ 13, 20; Evidence § 837; Homicide §§ 34-36, 445; Trial § 1286.**

### 2. Criminal Law § 106 (NCI4th)— noncapital murder—defendant's prior bad acts—statement of State's witness—discovery

The trial court did not err in a noncapital first-degree murder prosecution by denying defendant's pretrial motion to disclose evidence of prior crimes or bad acts by defendant that the State intended to introduce where a witness for the State testified about his written statement on redirect examination, the statement was read into evidence, and the statement contained an assertion that defendant had burglarized other homes. The State complied with the requirements of N.C.G.S. § 15A-903 by providing defendant with the substance of the statement; nothing in the discovery statute or N.C.G.S. § 8C-1, Rule 404(b) obligated the State to provide defendant with the written statement prior to trial.

**Am Jur 2d, Depositions and Discovery §§ 438, 443.**

STATE v. OCASIO

[344 N.C. 568 (1996)]

**3. Evidence and Witnesses § 2902 (NCI4th)— noncapital murder—prior burglary by defendant—admitted on redirect—no plain error**

There was no plain error in a noncapital first-degree murder prosecution where a State's witness was allowed to testify about a prior burglary by defendant. The prosecutor introduced the statement only on redirect examination in response to defense counsel's questioning of the witness; the State was entitled to clear up any confusion that may have been created by defense counsel's questioning. Even assuming that the trial court erred by not intervening *ex mero motu*, that error did not amount to manifest injustice and did not amount to plain error.

**Am Jur 2d, Trial § 564.**

**4. Evidence and Witnesses § 1262 (NCI4th)— noncapital murder—inculpatory statement by defendant—admissible**

The trial court did not err in a noncapital first-degree murder prosecution by denying defendant's motion to exclude his inculpatory statement. The trial court found that defendant was advised of his rights during his interrogation in New York and stated that he was willing to waive those rights; that he waived his rights orally and in writing and gave investigating officers an oral statement regarding the charges pending against him in North Carolina; and that one of the officers wrote a brief summary of the statement. The findings support its conclusion that defendant freely, knowingly, understandingly, and voluntarily waived his right to remain silent and his right to counsel after being advised of his rights, and the conclusions support the judgment denying defendant's motion to suppress.

**Am Jur 2d, Evidence §§ 716, 717; Trial § 1426.**

**State constitutional requirements as to exclusion of evidence unlawfully seized—post-Leon cases. 19 ALR5th 470.**

**What constitutes statement against interest admissible under Rule 804(b)(3) of Federal Rules of Evidence. 34 ALR Fed. 412.**

**5. Evidence and Witnesses § 1700 (NCI4th)— noncapital murder—autopsy photographs—admissible**

The trial court did not abuse its discretion in a noncapital first-degree murder prosecution by permitting the introduction of

**STATE v. OCASIO**

[344 N.C. 568 (1996)]

three photographs which were used to illustrate the testimony of the pathologist as to the victim's cause of death. Although some of the photographs were gruesome, they were relevant to show the circumstances of the killing and tended to establish the extent of one victim's head wound.

**Am Jur 2d, Evidence §§ 963, 964; Homicide §§ 276, 434.5; Trial § 507.**

**Necessity and effect, in homicide prosecution, of expert medical testimony as to cause of death. 65 ALR3d 283.**

**Evidence offered by defendant at federal criminal trial as inadmissible, under Rule 403 of Federal Rules of Evidence, on ground that probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury. 76 ALR Fed. 700.**

**6. Criminal Law § 468 (NCI4th)— noncapital murder—prosecutor's argument—no error**

The trial court did not err in a noncapital murder prosecution by not intervening *ex mero motu* in the prosecutor's closing argument where defendant contended that the prosecutor's argument contained misstatements of law, matters not in evidence, and personal opinions injected solely to arouse the passions of the jury, but the prosecutor's argument was not so grossly improper as to require the trial judge to intervene *ex mero motu* during the prosecutor's closing argument.

**Am Jur 2d, Trial §§ 555, 566, 609, 648.**

**Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused—modern state cases. 88 ALR3d 449.**

**7. Homicide § 727 (NCI4th)— felony murder—underlying conviction—failure to arrest—error**

The trial court erred in a noncapital murder prosecution which resulted solely in felony murder convictions by failing to arrest judgments on the underlying convictions for kidnapping.

**Am Jur 2d, Homicide § 72; Trial §§ 1427, 1428.**

**Application of felony-murder doctrine where the felony relied upon is an includible offense with the homicide. 40 ALR3d 1341.**

STATE v. OCASIO

[344 N.C. 568 (1996)]

**What felonies are inherently or foreseeably dangerous to human life for purposes of felony-murder doctrine. 50 ALR3d 397.**

8. **Criminal Law § 1237 (NCI4th)— sentencing—credit for assistance in obtaining guilty pleas—no abuse of discretion**

The trial court did not abuse its discretion in sentencing defendant for noncapital first-degree murder, burglary, and larceny by failing to give sufficient credit for the assistance defendant gave the State that enabled the State to secure guilty pleas from defendant's codefendants where the trial court sentenced defendant to the mandatory minimum for his first-degree murder convictions, consolidated several convictions for judgment, and gave minimum or presumptive sentences for those convictions.

**Am Jur 2d, Trial § 1760.**

**What constitutes playing "mitigating role" in offense allowing decrease in offense level under United States Sentencing Guideline sec. 3B1.2, 18 USCS Appendix. 100 ALR Fed. 156.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from two judgments imposing sentences of life imprisonment entered by Strickland, J., at the 16 January 1995 Criminal Session of Superior Court, Onslow County, upon jury verdicts of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed 12 February 1996. Heard in the Supreme Court 10 September 1996.

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, for the State.*

*Margaret Creasy Ciardella for defendant-appellant.*

FRYE, Justice.

Defendant, Eli Nain Ocasio, was indicted for the murders of Phyllis Aragona and Scott Allen Gasperson. He was also indicted for one count of second-degree burglary, four counts of felonious larceny, four counts of felonious possession of stolen property, two counts of first-degree kidnapping, one count of felonious breaking and entering, and one count of safecracking. He was tried noncapitally to a jury, found guilty of two counts of murder in the first degree, and sentenced to two mandatory terms of life imprisonment.

Defendant was sentenced to additional consecutive prison terms of fourteen years for second-degree burglary and larceny; two terms of twelve years for kidnapping; five years for two counts of larceny of a motor vehicle; and nine years for breaking and entering, larceny, and safecracking. Defendant appealed his murder convictions to this Court. We allowed defendant's motion to bypass the Court of Appeals as to the additional judgments.

Defendant brings forward ten assignments of error. After reviewing the record, transcript, briefs, and oral arguments of counsel, we conclude that defendant received a fair trial, free of prejudicial error.

The State's evidence presented at trial tended to show the following facts and circumstances: On 12 July 1990, defendant lived in a mobile home in Jacksonville, North Carolina, with his mother, Maria Monserrata (Monserrata), and Gary Fernandez (Fernandez), Monserrata's boyfriend. Also living in the mobile home were Fernandez's son Orlando; Orlando's wife, Lissette; the baby of Orlando and Lissette; Fernandez's son Charlie; and Monserrata's other son, Bruce. Near the beginning of July, Fernandez and Orlando were planning to rob Woodson Music and Pawn Store, which was located in Piney Green Shopping Center in Jacksonville. Fernandez asked Monserrata to participate in the robbery. Fernandez and Monserrata solicited defendant's participation. Fernandez and Monserrata also solicited the participation of Monserrata's daughter, Jeanette, but she refused. Defendant told his friend Mark Watkins about the plans for the robbery, but Watkins declined to participate. The plan consisted of waiting at the home of Scott Gasperson, the store's manager, and Phyllis Aragona, Gasperson's girlfriend who was also a store employee, until they came home from work one evening, kidnapping them, and forcing Gasperson to assist them in taking money and property from the store. On the night of 12 July 1990, the plan was executed.

Monserrata, Fernandez, Orlando, and defendant went to the victims' residence, pried open the front door with a screwdriver, and went inside. Monserrata left, but the three men remained inside. When Aragona arrived at her home, the men bound her with duct tape. Defendant guarded Aragona while Fernandez and Orlando pillaged the house. When Gasperson arrived, they bound him with duct tape as well. At some point, Monserrata returned, and they all went back to the mobile home. Defendant drove Aragona's Chevrolet

Blazer and transported the victims, who were still bound with duct tape. Once back at the mobile home, defendant guarded the victims.

On the morning of 13 July 1990, Fernandez left with Gasperson and returned without him. Gasperson's lifeless body was found later that day beside his automobile in a wooded area. Gasperson had suffered a shotgun blast to the head. On 13 July 1990, Monserrata, Fernandez, Orlando, and defendant travelled in two automobiles to Miami, Florida. The State's evidence showed that the most direct route from Jacksonville to Miami would be south on Highway 53, crossing Highway 41 in Pender County, and then to Interstate 95. Upon their arrival in Miami, the group stayed a couple of weeks and then went to the Dominican Republic. Aragona's decayed body was found approximately nine months later near Highway 53 in Pender County, approximately thirty-five to forty-five miles from Jacksonville.

The evidence also tended to show that two different types of duct tape were used to bind the victims. Pieces of both types were found at the victims' residence and at defendant's residence as well as at the scenes where the victims' bodies were ultimately located. The screwdriver that was used to pry open the front door to the victims' residence was also found at defendant's residence, along with homemade hoods of the type attached to Gasperson's body and of the type found in the trunk of the automobile in which defendant rode to Florida. Property owned by Gasperson and duct tape consistent with the type used to bind the victims were found in a storage unit rented by Orlando. Monserrata, Fernandez, and Orlando were arrested when they fled to the Dominican Republic; however, defendant was not arrested until 1994, when he was taken into custody in New York by agents of the Federal Bureau of Investigation. While in custody in New York, defendant gave a statement to an Onslow County police officer and an agent of the North Carolina State Bureau of Investigation. Defendant was ultimately extradited to North Carolina.

Defendant did not testify at trial but presented the testimony of the bail bondsman who had posted bail for Monserrata and Fernandez to be released from jail on narcotics charges prior to the commission of the crimes charged in this case.

Defendant made motions to dismiss all charges against him at the close of the State's evidence and again at the close of all the evidence. Except for the charges of felonious possession of stolen goods on

STATE v. OCASIO

[344 N.C. 568 (1996)]

which the State did not proceed, the trial court denied defendant's motions to dismiss.

[1] Defendant assigns as error the trial court's denial of his motions to dismiss all the charges against him. Defendant argues that the evidence was insufficient to show that he possessed the requisite intent to commit any of the charged crimes.

On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). What constitutes substantial evidence is a question of law for the court. *Id.* To be "substantial," evidence must be existing and real, not just "seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Vause*, 328 N.C. at 236, 400 S.E.2d at 61. "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988).

In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). "The defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971). The determination of the witnesses' credibility is for the jury. *See Locklear*, 322 N.C. at 358, 368 S.E.2d at 383.

"[C]ontradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 653. "The trial court's function is to determine whether the evidence will permit a reasonable inference that the defendant is guilty of the crimes charged." *Vause*, 328 N.C. at 237, 400 S.E.2d at 61.

In the instant case, defendant does not contend that he is not the perpetrator of the crimes charged. Instead, defendant argues that there was insufficient evidence to show that he possessed the requisite *mens rea* for the crimes charged. We disagree.

**STATE v. OCASIO**

[344 N.C. 568 (1996)]

The State's evidence showed that defendant agreed to commit the crimes charged with Monserrata, Fernandez, and Orlando. The evidence further shows that defendant suggested to Mark Watkins that he could participate in the planned robbery. The evidence also shows that defendant told Watkins that if either of the victims saw their faces, they would be killed. The evidence shows that defendant stood guard over the victims both at their apartment and at the mobile home. Additionally, we note that defendant was convicted of two counts of first-degree murder solely on the basis of the felony murder rule with the underlying felonies being two counts of kidnapping. Viewing the evidence in the light most favorable to the State, we conclude that the trial court did not err in denying defendant's motions to dismiss the charges of two counts of first-degree murder, one count of second-degree burglary, two counts of larceny, two counts of kidnapping, two counts of larceny of motor vehicle, one count of breaking and entering, and one count of safecracking. The evidence was clearly sufficient to show that defendant acted in concert with Fernandez, Monserrata, and Orlando in committing these offenses. Accordingly, we reject this assignment of error.

[2] Defendant also assigns as error the trial court's denial of his pretrial motion to disclose evidence of prior crimes or bad acts by defendant that the State intended to introduce pursuant to Rule 404(b) of the North Carolina Rules of Evidence. Defendant argues that the trial court's denial of his motion deprived him of his constitutional rights to due process including his right to effective cross-examination of Mark Watkins regarding Watkins' written statement to the police containing an assertion that defendant had previously broken into other homes and burglarized them.

At trial, Watkins, a witness for the State, did not testify as to his written statement to the police on direct examination. However, after being cross-examined by defendant about his statement to police, Watkins testified on redirect examination about the written statement. After authenticating the statement, the State requested that the statement be read into evidence rather than passed to the jury. Without objection, the trial court allowed the State's request. In addition to describing the robbery plans of defendant and his family, Watkins' written statement read into evidence stated that defendant told Watkins that defendant had also broken into a house on Lakewood Drive. Watkins stated that defendant told Watkins that defendant had stolen "a camera, some liquor and some old, possibly valuable coins."

STATE v. OCASIO

[344 N.C. 568 (1996)]

Rule 404(b) governs the admissibility of evidence of other crimes, wrongs, or acts and provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1992). In *State v. Payne*, 337 N.C. 505, 448 S.E.2d 93 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d. 292 (1995), we said that Rule 404(b) "addresses the admissibility of evidence; it is not a discovery statute which requires the State to disclose such evidence as it might introduce thereunder." *Id.* at 516, 448 S.E.2d at 99. The statute governing disclosure of evidence by the State, N.C.G.S. § 15A-903 (1988), requires the prosecutor

[t]o divulge, in [writing], the substance of any oral statement relevant to the subject matter of the case made by the defendant, regardless of to whom the statement was made, within the possession, custody or control of the State . . . .

N.C.G.S. § 15A-903(a)(2).

In the instant case, defendant concedes that the "record reveals that the State provided the *substance* of the testimony of Mark Watkins." Nevertheless, defendant argues that "there is nothing in the record to show that the defendant was ever provided information regarding the statement of Mark Watkins that defendant supposedly committed break-ins." Defendant contends that it is this specific information that he requested in his motion. We conclude, however, that the State complied with the requirements of N.C.G.S. § 15A-903 by providing defendant with the substance of Watkins' statement. Nothing in the discovery statute or Rule 404(b) obligated the State to provide defendant with Watkins' written statement prior to trial. Accordingly, we reject this assignment of error.

[3] By another assignment of error, defendant contends that the trial court erred in allowing Mark Watkins to testify about the prior burglary because it constituted a prior bad act purportedly committed by defendant. Defendant did not object to Mark Watkins' reading of his 4 September 1990 statement to the police at trial and now asks this Court to order a new trial under the plain error rule. As we have stated previously:

**STATE v. OCASIO**

[344 N.C. 568 (1996)]

[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the . . . mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)) (footnote omitted in original), *quoted in State v. Weathers*, 339 N.C. 441, 450, 451 S.E.2d 266, 271 (1994). Although *Odom* dealt with jury instructions, we have applied the plain error rule to the admission of evidence. *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 806 (1983).

The prosecutor introduced the written statement only on redirect examination of Mark Watkins in response to defense counsel's questioning of Watkins about a statement that he had made to police. The State was entitled to clear up any confusion that may have been created by defense counsel's questioning regarding a statement that Watkins had made to the police. Even assuming *arguendo* that the trial court erred in not intervening *ex mero motu* to exclude that portion of Mark Watkins' statement which referred to the prior bad act, we conclude that the court's error did not result in manifest injustice and did not amount to plain error.

[4] By another assignment of error, defendant contends that the trial court committed prejudicial error in denying his motion to suppress and to exclude from evidence defendant's inculpatory statement. By pretrial motion filed 4 August 1994, defendant moved to suppress his statement to police on the ground that it was unconstitutionally obtained. The trial court conducted a hearing on defendant's motion at which defendant presented evidence.

In *State v. Payne*, 327 N.C. 194, 394 S.E.2d 158 (1990), *cert. denied*, 498 U.S. 1092, 112 L. E. 2d 1062 (1991), this Court said:

STATE v. OCASIO

[344 N.C. 568 (1996)]

North Carolina law is well established regarding this Court's role in reviewing a trial court's determination of the voluntariness of a confession.

Findings of fact made by a trial judge following a voir dire hearing on the voluntariness of a confession are conclusive upon this Court if the findings are supported by competent evidence in the record. No reviewing court may properly set aside or modify those findings if so supported. This is true even though the evidence is conflicting.

*Id.* at 208-09, 394 S.E.2d at 166 (quoting *State v. Jackson*, 308 N.C. 549, 569, 304 S.E.2d 134, 145 (1983)) (citations omitted in original). In the instant case, the trial court made extensive findings of fact regarding defendant's interrogation in New York. The court found as fact that defendant was advised of his *Miranda* rights, that defendant stated that he understood his rights and was willing to waive those rights, that defendant waived those rights both orally and in writing, that defendant then gave the investigating officers an oral statement regarding the charges pending against him in North Carolina, and that one of the officers then wrote a brief summary of the statement made by defendant. Defendant does not challenge any of these findings.

The trial court's findings support its conclusion that defendant freely, knowingly, understandingly, and voluntarily waived his right to remain silent and his right to counsel after being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). The conclusions support the judgment denying defendant's motion to suppress. Accordingly, we reject this assignment of error.

**[5]** By another assignment, defendant contends that the trial court committed prejudicial error in overruling his objection to and in permitting the introduction of prejudicial and inflammatory photographs which he argues were presented solely to inflame the passions of the jury. We disagree.

In *State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994), we said that

"[p]hotographs of homicide victims are admissible at trial even if they are 'gory, gruesome, horrible, or revolting, so long as they are used by a witness to illustrate his testimony and so long as an excessive number of photographs are not used solely to arouse the passions of the jury.' " *State v. Thompson*, 328 N.C. 477, 491, 402 S.E.2d 386, 394 (1991) (quoting *State v. Murphy*, 321 N.C. 738,

741, 365 S.E.2d 615, 617 (1988)). "Photographs may also be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988).

*Rose*, 335 N.C. at 319, 439 S.E.2d at 528.

Admissible evidence may be excluded, however, under Rule 403 of the North Carolina Rules of Evidence if the probative value of such evidence is substantially outweighed by its prejudicial effect. "Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in light of the illustrative value of each . . . lies within the discretion of the trial court." *State v. Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

In this case, defendant moved to exclude three photographs from being introduced into evidence. Although some of the photographs were gruesome, they were relevant to show the circumstances of the killing and tended to establish the extent of Gasperson's head wound. Each photograph was used to illustrate the testimony of the pathologist as to the victim's cause of death. Thus, the trial court did not abuse its discretion in not excluding these three photographs from evidence under Rule 403.

**[6]** By four assignments of error, defendant contends that the trial court committed reversible error when it failed to intervene *ex mero motu* during the prosecutor's closing argument. Defendant contends that the prosecutor's argument contained misstatements of law, matters not in evidence, and personal opinions injected solely to arouse the passions of the jury.

The arguments of counsel are left largely to the control and discretion of the trial judge, and counsel will be granted wide latitude in the argument of hotly contested cases. *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992). "Counsel is permitted to argue the facts which have been presented, as well as reasonable inferences which can be drawn therefrom." *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). "Because defendant did not object to the portions of the argument to which he now assigns error, 'review is limited to an examination of whether the argument was so grossly improper that the trial [court] abused [its] discretion in failing to intervene *ex mero motu*.' " *State v. McNeil*, 324 N.C. 33, 48, 375 S.E.2d

909, 924 (1989) (quoting *State v. Gladden,* 315 N.C. 398, 417, 340 S.E.2d 673, 685, *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986)) (alteration in original), *sentence vacated on other grounds,* 494 U.S. 1050, 108 L. Ed. 2d 756 (1990). Therefore, this Court's duty is limited as follows:

> Where defendant fails to object to an alleged impropriety in the State's argument and so flag the error for the trial court, "the impropriety . . . must be gross indeed in order for this court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it."

*State v. Abraham,* 338 N.C. 315, 338, 451 S.E.2d 131, 143 (1994) (quoting *State v. Johnson,* 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)) (alteration in original). In determining whether the prosecutor's argument was grossly improper, the Court must examine the argument in the context in which it was given and in light of the overall factual circumstances to which it refers. *State v. Alston,* 341 N.C. 198, 461 S.E.2d 687 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 100 (1996).

In the instant case, during his closing argument, the prosecutor, after directing the jury's attention to the abrasions on the nose of the victim, argued that Scott Gasperson was beaten at the mobile home. Defendant also argues that the prosecutor misstated the testimony of Mark Watkins in arguing that Watkins had testified that he was going to help defendant break into a house. Further, defendant argues that the prosecutor's arguments that defendant "went hunting with the pack," that Phyllis Aragona was not provided with a "Christian burial," and that the victims had a right to go to their homes without being killed were grossly improper. Also, defendant argues that in disputing defendant's testimony as to defendant's participation in the crimes charged, the prosecutor implicitly called defendant a "liar" and that the prosecutor bolstered the testimony of State's witness Jeannette Ocasio by stating that she was courageous because she told "the truth about [her] own mother and [her] own brother." Finally, defendant argues that during closing arguments, the prosecutor misstated the law as to "mere presence" at the scene of a crime and as to whether the jury could consider defendant's age as a factor in his culpability. After reviewing the transcript, record, and briefs in this case, we conclude that the prosecutor's argument was not so grossly improper as to require the trial judge to intervene *ex mero motu* during the prosecutor's closing argument.

**[7]** By another assignment of error, defendant contends, and the State agrees, that the trial court erred in failing to arrest judgments on the first-degree kidnapping convictions when these convictions were the underlying felonies for the felony murder convictions. Because defendant's convictions of first-degree murder rest solely on a felony-murder theory, with kidnapping as the underlying felony, the kidnapping convictions merge with the murder convictions, and defendant may not be separately sentenced for kidnapping. *State v. Blankenship*, 337 N.C. 543, 563, 447 S.E.2d 727, 739 (1994); *State v. Gardner*, 315 N.C. 444, 450-60, 340 S.E.2d 701, 706-712 (1986); *State v. Silhan*, 302 N.C. 223, 261-62, 275 S.E.2d 450, 477 (1981). Accordingly, we arrest judgment on defendant's two convictions for kidnapping.

**[8]** In his final assignment of error, defendant contends that the trial court abused its discretion when it failed to give sufficient credit to the substantial assistance defendant gave that enabled the State to secure guilty pleas of defendant's codefendants. At defendant's sentencing hearing, the State stipulated that defendant rendered substantial assistance to the State in the State's cases against Orlando Fernandez and Maria Monserrata, in voluntarily submitting "an extensive statement of facts and proper testimony in both those cases, which was instrumental in the immediate nonjury disposition of those impending trials." Additionally, Officer Lee Stevens testified that defendant's "statement and offer to testify [constituted] substantial assistance to the law enforcement officers in the case."

We note, however, that for the two first-degree murder convictions, defendant was sentenced to the mandatory minimum terms of life imprisonment. The second-degree burglary conviction and one of the felonious larceny convictions were consolidated for judgment and defendant was sentenced to the mandatory minimum term of fourteen years' imprisonment for the burglary conviction. The trial court consolidated for judgment the two counts of larceny of a motor vehicle, each of which carried a three-year presumptive sentence, and sentenced defendant to five years' imprisonment, the judge finding as a mitigating factor that defendant had rendered substantial assistance. The trial court also consolidated for judgment the breaking and entering conviction, the safecracking conviction, and the remaining larceny conviction, each of which carried a three-year presumptive sentence, and sentenced defendant to a term of nine years' imprisonment, the judge again finding as a mitigating factor that defendant had rendered substantial assistance.

STATE v. OCASIO

[344 N.C. 568 (1996)]

"While [a trial judge] is required to justify a sentence which deviates from a presumptive term to the extent that he must make findings in aggravation and mitigation properly supported by the evidence and in accordance with the [Fair Sentencing] Act, a trial judge need not justify the weight he attaches to any factor." *State v. Ahearn*, 307 N.C. 584, 596-97, 300 S.E.2d 689, 697 (1983). In the instant case, the trial court sentenced defendant to the mandatory minimum sentences of life imprisonment for his first-degree murder convictions. Additionally, the court consolidated several convictions for judgment and gave minimum or presumptive sentences for those convictions. Accordingly, we reject defendant's final argument.

In conclusion, our holdings on appeal in the present case are as follows:

No. 92CRS13020—First-Degree Murder—NO ERROR.

No. 92CRS13021—First-Degree Murder—NO ERROR.

No. 92CRS13022—Second-Degree Burglary and Larceny—NO ERROR.

No. 92CRS13023—Kidnapping—JUDGMENT ARRESTED.

No. 92CRS13024—Kidnapping—JUDGMENT ARRESTED.

No. 92CRS11964—Larceny of Motor Vehicle—NO ERROR.

No. 92CRS11965—Larceny of Motor Vehicle—NO ERROR.

No. 92CRS11966—Breaking and Entering and Larceny—NO ERROR.

No. 92CRS11967—Safecracking—NO ERROR.