STATE OF NORTH CAROLINA v. WILLIE MELVIN JACKSON

No. COA03-733

(Filed 17 August 2004)

**1. Confessions and Incriminating Statements— custodial interrogation—motion to suppress**

The trial court did not err in a first-degree murder, attempted robbery with a firearm, and conspiracy to commit robbery with a firearm case by denying defendant's motion to suppress his 7 June 2001 statement made to an officer while defendant sat with two officers while waiting for juvenile authorities to transport defendant elsewhere, because: (1) the officer did not initiate any questioning with defendant, defendant spontaneously stated to the officer that he knew where the cap in the room came from and the officer simply responded "so do I" which is not the type of statement that necessarily invites a response, and defendant thereafter volunteered information about another robbery unrelated to defendant's pending charges; (2) the circumstances did not warrant a conclusion that the officer should have known that he would elicit an incriminating response from defendant by saying "so do I;" (3) the officer may have simply asked for clarification for such things as who defendant meant by "we," and defendant failed to cite any cases to support the assertion that the officer's requests for clarification amounted to interrogation; and (4) although defendant's Sixth Amendments rights attached, defendant was not interrogated and thus his Sixth Amendment rights were not violated.

**2. Constitutional Law— presumption of innocence—instruction not to form an opinion—plain error analysis**

The trial court did not deprive defendant of his constitutional right to the presumption of innocence and did not commit plain error by instructing the jury before the trial began not to form an

opinion regarding defendant's guilt or innocence because: (1) the presumption of innocence is not evidence, but instead is a way of describing the prosecution's duty to produce evidence of guilt and to convince the jury beyond a reasonable doubt; and (2) defendant failed to cite any cases showing that such an instruction constituted an error.

**3. Juveniles— conspiracy to commit armed robbery—jurisdiction—absence of juvenile petition—transaction related to transferred felony charge**

The superior court had jurisdiction over an offense of conspiracy to commit armed robbery that occurred when defendant was fifteen years old, even though no juvenile petition had been filed in district court regarding the conspiracy charge, where juvenile petitions alleging murder and attempted armed robbery were filed in district court; the district court ordered that those offenses be transferred to superior court; defendant was subsequently indicted for first-degree murder, attempted armed robbery and conspiracy to commit armed robbery; the offense of conspiracy to commit armed robbery fell within the transaction related to the felony charge of attempted armed robbery that was transferred from district to superior court; and the superior court thus had jurisdiction over the conspiracy offense under N.C.G.S. § 7B-2203(c).

**4. Homicide— felony murder—attempted armed robbery**

The trial court erred by failing to arrest judgment on an attempted armed robbery offense where that offense served as the underlying felony for defendant's felony murder conviction because where defendant is convicted of felony murder only, the underlying felony constitutes an element of first-degree murder and merges into the murder conviction.

**5. Homicide— felony murder—short-form indictment—constitutionality**

The trial court did not err by entering judgment convicting defendant of first-degree murder based on an alleged insufficient indictment to allege the elements of felony murder, because our Supreme Court has consistently held that the short-form indictment is sufficient to charge a defendant with first-degree murder.

6. **Constitutional Law— effective assistance of counsel—dismissal without prejudice—motion for appropriate relief**

Defendant's claim of ineffective assistance of counsel is dismissed without prejudice so that defendant may file a motion for appropriate relief before the trial court because there is inadequate evidence of ineffective assistance of counsel in the record.

Appeal by defendant from judgments dated 24 October 2002 by Judge Cy A. Grant in Superior Court, Northampton County. Heard in the Court of Appeals 4 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Steven F. Bryant, for the State.*

*Everett & Hite, L.L.P., by Kimberly A. Swank, for defendant-appellant.*

McGEE, Judge.

Willie Melvin Jackson (defendant) was convicted on 24 October 2002 of first degree murder, attempted robbery with a firearm, and conspiracy to commit robbery with a firearm. The trial court entered judgment and sentenced defendant to life imprisonment without parole for the murder conviction. The trial court further sentenced defendant to a minimum of 64 months and a maximum of 86 months in prison for the attempted robbery conviction and a minimum of 25 months and a maximum of 39 months in prison for the conspiracy conviction to run consecutively. Defendant appeals.

The State's evidence at trial tended to show that James Troutman (Troutman), manager of First Citizen's Bank (the bank) in Conway, and two women working as bank tellers, Vickie Howell (Howell) and Carolyn Watson (Watson), were working on the afternoon of 24 May 2001. Howell testified that at approximately 3:25 p.m. that afternoon, she was waiting on a customer, Marjorie Joyner (Joyner). Howell heard someone yell and she saw a "young guy" who had come into the bank with a "black mesh type thing on his face." Howell testified that the young male said, "don't push the f—— button" and then she heard a shot. Howell discovered Watson lying on the floor and told Troutman that Watson had been shot.

Joyner testified that while she was standing at Howell's teller window, she observed two young males enter the bank. One announced that he meant "business" and walked toward Watson's

teller window, while the second male crouched down. Joyner heard gunfire and then saw that Watson had fallen.

Troutman testified that at about 3:20 or 3:25 p.m. that afternoon, he was working at his desk when he heard someone yell, "nobody touch that f—— button." Troutman looked up and saw a male with a pistol in his hand in the bank lobby. Troutman also saw a second male crouched down at the corner of the teller window. The male with the pistol passed by Troutman's office and walked toward Watson's teller window. After the male passed by his office, Troutman heard a gunshot. The two males fled the bank immediately after the gunshot. Watson died on the way to the hospital as the result of a single gunshot wound just below her chin.

Mae Woodard (Woodard) testified that she saw defendant and another male named Cody Hill (Hill) standing on the street corner outside the bank at around 3:20 p.m. that afternoon. Woodard, who had previously taught defendant and Hill in school, stopped to speak with them. Woodard then went into the bank to make a deposit, and when she left the bank, she observed defendant and Hill walking away from the bank. Shortly after arriving back at work, Woodard saw rescue squad vehicles and police cars outside the bank. She returned to the bank and heard that Watson had been shot. Woodard informed an officer at the scene that she had just been at the bank and had seen two of her former students, defendant and Hill, on the corner outside the bank. She gave a written statement at the Conway Police Department. Afterwards, Woodard was taken back to the bank and was asked to view a videotape from the bank's surveillance camera. Woodard identified the male with the gun as defendant and the other male as Hill.

Conway Chief of Police Billy Duke (Chief Duke) testified that at around 7:00 p.m. that evening, FBI Agent Fernando Fernandez (Agent Fernandez), who was assisting with the investigation, spoke with Hill's father. Agent Fernandez then asked Chief Duke to check out a car at the Arrowhead Trailer Park belonging to Toby Gary (Gary), a twenty-four-year-old man from New York. Chief Duke and Deputy Kevin Bird (Deputy Bird) searched the unlocked car, which was parked at Lot 107 of the Arrowhead Trailer Park. The officers found two caps in the car that matched the description of the caps worn by the two males at the bank. On the way back to the police station, the officers heard over the police radio that three suspects, Gary, Hill, and defendant, had been detained.

Chief Ted Sumner (Chief Sumner) of the Gaston Police Department testified that he took Gary and defendant into custody that evening and transported them to the Conway Police Department with defendant in the front passenger's seat and Gary in the rear passenger area. Later that evening, the Conway Police Department asked Chief Sumner to check his car for a gun. Chief Sumner did so and found a handgun beneath the passenger's seat. Expert testimony at trial established that Watson was shot by the handgun found under the passenger's seat of Chief Sumner's patrol car.

The State also offered evidence of three statements defendant made to police. In defendant's first statement, made on the evening of 24 May 2001, defendant stated that Gary and Hill went into the bank on the afternoon of 24 May 2001 while defendant waited for them. While Gary and Hill were in the bank, defendant went to a thrift store and then waited for them in the car. In his second statement that evening, defendant admitted that he shot Watson, but defendant claimed that the shooting was an accident. Defendant also made a third statement on 7 June 2001 to Detective Charles Barfield (Officer Barfield) of the Northampton Sheriff's Department. In his third statement, defendant stated that he was with Gary and Shawn Garris (Garris) on the evening of 23 May 2001 when a man was robbed by Gary and Garris. Defendant further stated that they had attempted to get a gun "to do a job." Defendant presented no evidence.

We note at the outset that defendant has failed to present an argument in support of assignments of error numbers two, four through seven, ten, fourteen, fifteen, twenty, twenty-one, twenty-three through twenty-six, twenty-nine, and thirty-two through thirty-five. Therefore, those assignments of error are deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).

[1] Defendant first argues in assignments of error numbers sixteen through eighteen that the trial court erred in denying his motion to suppress his 7 June 2001 statement because it was obtained as a result of custodial interrogation after defendant had been formally charged. Accordingly, defendant asserts that he is entitled to a new trial because his constitutional rights under the Fifth and Sixth Amendments of the United States Constitution were violated. For the reasons stated below, we disagree.

In a written motion dated 22 October 2002, defendant moved to suppress "all evidence of written or oral statements made by him" to

law enforcement. However, on appeal, the only statement at issue is the statement defendant made to Officer Barfield on 7 June 2001. We note that

> [o]ur review of a denial of a motion to suppress by the trial court is "limited to determining whether the trial judge's underlying. findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."

*State v. Barden,* 356 N.C. 316, 340, 572 S.E.2d 108, 125 (2002) (quoting *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *cert. denied,* 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). "However, the trial court's conclusions of law 'must be legally correct, reflecting a correct application of applicable legal principles to the facts found.'" *State v. Strobel,* 164 N.C. App. 310, 313, 596 S.E.2d 249, 253 (2004) (quoting *State v. Fernandez,* 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997)).

In the case before our Court, *voir dire* was held during trial to determine the admissibility of defendant's 7 June 2001 statement to Officer Barfield, as well as statements defendant made to other officers. Evidence at *voir dire* tended to show that Officer Barfield testified that after defendant's 7 June 2001 court appearance, Officer Barfield and Officer Shelton Skinner (Officer Skinner) sat with defendant as they waited for juvenile authorities to transport defendant elsewhere. Officer Barfield did not make any statements to defendant, but he described defendant as being "very talkative." Officer Barfield testified that when defendant saw the cap which had been presented into evidence, defendant "spontaneously stated, 'I know where that cap came from.'" Officer Barfield simply responded, "so do I." Officer Barfield further testified that defendant then "went on to say, 'well I can tell you some stuff that you don't know about.'" Officer Barfield responded, "yeah[,]" and defendant "proceeded at that time talking and disclosing to me of a robbery committed in Roanoke Rapids by him and some others." When asked whether he initiated any conversation with defendant at any point, Officer Barfield responded negatively. On cross-examination during *voir dire,* Officer Barfield stated that the only thing he would have asked defendant was for defendant to "be more specific about something." Officer Barfield also specifically testified that he did not tell defendant he had a right not to say anything.

**STATE v. JACKSON**

[165 N.C. App. 763 (2004)]

Officer Skinner testified at *voir dire* that he was present when defendant made the 7 June 2001 statement to Officer Barfield. Officer Skinner testified that defendant "just decided to talk" while they were waiting for defendant to be transferred. Officer Skinner stated that he did not ask defendant anything during this time and that Officer Barfield "may have asked [defendant] to specify what he was talking about[.]" Officer Skinner further testified that neither he nor Officer Barfield gave defendant any *Miranda* warnings. Defendant did not testify during *voir dire* concerning the motion to suppress.

At the conclusion of *voir dire*, the trial court immediately found and concluded, among other things, that "the statement made by the defendant on June 7, 2001, was made freely, voluntarily and understandingly." Accordingly, the trial court orally denied the motion to suppress and overruled defendant's objection to admission of the statement into evidence.

## I. Fifth Amendment

Defendant first challenges admission of his statement to Officer Barfield as a violation of his rights under the Fifth Amendment of the U.S. Constitution. Under the interpretation of the Fifth Amendment under *Miranda v. Arizona*, 384 U.S. 436, 479, 16 L. Ed. 2d 694, 726 (1966), "no evidence obtained from a defendant through *custodial interrogation* may be used against that defendant at trial, unless the interrogation was preceded by (1) the appropriate warnings of the rights to remain silent and to have an attorney present and (2) a voluntary and intelligent waiver of those rights." *State v. Locklear*, 138 N.C. App. 549, 551, n.2, 531 S.E.2d 853, 855, n.2, *disc. review denied*, 352 N.C. 359, 544 S.E.2d 553 (2000). However, " '[t]he *Miranda* warnings and waiver of counsel are required only when an individual is being subjected to custodial interrogation.' " *State v. Kincaid*, 147 N.C. App. 94, 101, 555 S.E.2d 294, 300 (2001) (quoting *State v. Clay*, 297 N.C. 555, 559, 256 S.E.2d 176, 180 (1979), *overruled on other grounds by State v. McAvoy*, 331 N.C. 583, 601, 417 S.E.2d 489, 500 (1992), *and by State v. Davis*, 305 N.C. 400, 414-15, 290 S.E.2d 574, 583 (1982)).

Defendant argues that his Fifth Amendment right applies in the present case because his statement to Officer Barfield was the result of custodial interrogation. The State does not dispute that defendant was in custody at the time of the 7 June 2001 statement, or that defendant was not advised of his *Miranda* rights. However, the State argues that Officer Barfield did not interrogate defendant;

rather, defendant's statement was spontaneous and therefore admissible. Thus, the issue is whether the statement was the result of an interrogation.

We begin our analysis by noting that "not every statement obtained by police from a person in custody is considered the product of interrogation." *State v. Fisher*, 158 N.C. App. 133, 142, 580 S.E.2d 405, 413, *disc. review denied*, 357 N.C. 464, 586 S.E.2d 273-74 (2003), *aff'd*, 358 N.C. 215, 593 S.E.2d 583 (2004).

> The term "interrogation" is not limited to express questioning by law enforcement officers, but also includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

*State v. Golphin*, 352 N.C. 364, 406, 533 S.E.2d 168, 199 (2000) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980)), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). We emphasize that the definition of interrogation extends only to words or actions that police officers should reasonably have known would elicit an incriminating response "because 'the police surely cannot be held accountable for the unforeseeable results of their words or actions[.]' " *Golphin*, 352 N.C. at 406, 533 S.E.2d at 199 (quoting *Innis*, 446 U.S. at 301-02, 64 L. Ed. 2d at 308)). Further,

> [f]actors that are relevant to the determination of whether police "should have known" their conduct was likely to elicit an incriminating response include: (1) "the intent of the police"; (2) whether the "practice is designed to elicit an incriminating response from the accused"; and (3) "[a]ny knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion . . . ."

*Fisher*, 158 N.C. App. at 142-43, 580 S.E.2d at 413 (quoting *Innis*, 446 U.S. at 301-02, n.7,8, 64 L. Ed. 2d at 308, n.7,8).

In this case, as already stated, Officer Barfield did not initiate any questioning with defendant. Rather, defendant spontaneously stated to Officer Barfield that he knew where the cap in the room came from. Officer Barfield responded simply, "so do I." This is not the type of statement that necessarily invites a response. According to testimony by both Officers Barfield and Skinner, defendant then volunteered the information about another robbery unrelated to defendant's pending charges. Both officers also testified that Officer Barfield

may have asked for clarification on a couple of occasions as defendant talked about the unrelated robbery.

Defendant emphasizes that when he made this statement to Officer Barfield, he was only fifteen years old, he was facing first degree murder and attempted robbery charges, and he had just left a probable cause hearing in district court. Defendant argues that he was "undoubtedly nervous and scared" and "particularly susceptible to any persuasion tactics." In addition, defendant alleges that he was "confronted with a baseball cap" while he was waiting to be transferred. However, we do not find that these circumstances warrant a conclusion that Officer Barfield should have known that he would elicit an incriminating response from defendant by saying, "so do I."

Furthermore, we note that defendant argues that Officer Barfield "expressly questioned Defendant about the details, asking him to be more specific." However, this assertion is not supported by the evidence in the transcript. Rather, the evidence shows that Officer Barfield may have simply asked for clarification for such things as who defendant meant by "we." Defendant has also cited no cases to support the assertion that Officer Barfield's requests for clarification amounted to interrogation, and we hold that Officer Barfield's conduct did not constitute interrogation under the Fifth Amendment.

## II. Sixth Amendment

The Sixth Amendment to the U.S. Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense." U.S. Const. amend. VI. "The Sixth Amendment right to counsel attaches only 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *State v. Lippard*, 152 N.C. App. 564, 569-70, 568 S.E.2d 657, 661 (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417 (1972)), *disc. review denied and cert. denied*, 356 N.C. 441, 573 S.E.2d 159 (2002). "[T]he police may not interrogate a defendant whose Sixth Amendment right has attached unless counsel is present or the defendant expressly waives his right to assistance of counsel." *State v. Warren*, 348 N.C. 80, 95, 499 S.E.2d 431, 439, *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998).

As just stated, the Sixth Amendment protects a defendant from *interrogation* after the right has attached. In the analysis regarding defendant's Fifth Amendment challenge, we concluded that defend-

ant was not interrogated by Officer Barfield. Thus, although defendant's Sixth Amendment rights had attached, because he was not interrogated, the conclusion follows that defendant's Sixth Amendment rights were not violated. Accordingly, the assignments of error challenging the trial court's denial of defendant's motion to suppress the 7 June 2001 statement are overruled.[1]

[2] Defendant next argues in assignment of error number thirteen that the trial court deprived him of his constitutional right to a presumption of innocence by instructing the jury not to form an opinion regarding defendant's guilt or innocence. We note that defendant failed to object or make a constitutional claim for this alleged error at trial. "Constitutional questions not raised and passed upon at trial will not be considered on appeal." *State v. Call*, 353 N.C. 400, 421, 545 S.E.2d 190, 204, *cert. denied*, 534 U.S. 1046, 151 L. Ed. 2d 548 (2001).

> "In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(c)(4). In order to establish plain error, a defendant must establish that the trial court committed error and that absent this error, the jury would have probably reached a different result.

*State v. Gainey*, 355 N.C. 73, 93, 558 S.E.2d 463, 477, *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002).

Defendant cites language from *Coffin v. United States*, 156 U.S. 432, 459, 39 L. Ed. 481, 493 (1895) for the proposition that the presumption of innocence is an "instrument of proof created by the law in favor of one accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof

---

1. However, we note that even if defendant's constitutional rights had been violated, such error would have been harmless beyond a reasonable doubt. Under N.C. Gen. Stat. § 15A-1443(b) (2003), "[a] violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." In this case, there was overwhelming evidence of defendant's guilt. He was identified on the surveillance video by a former teacher and the gun which resulted in the death of Watson was discovered after defendant had been riding in Officer Sumner's patrol car. Further, defendant's statement to Officer Barfield dealt with a robbery totally unrelated to the charges he faced at the time of the statement.

which the law has created." Defendant argues that the trial court's instruction about not forming an opinion regarding defendant's guilt or innocence effectively "operated to remove from the jury's consideration a portion of the 'proof created by the law,' which the jury was bound to consider."

Subsequent cases have commented on the *Coffin* Court's view of the presumption of innocence being an "instrument of proof." For example, in *Taylor v. Kentucky*, the United States Supreme Court noted in a footnote that "the so-called 'presumption' is not evidence— not even an inference drawn from a fact in evidence—but instead is a way of describing the prosecution's duty both to produce evidence of guilt and to convince the jury beyond a reasonable doubt." *Taylor v. Kentucky*, 436 U.S. 478, 483-84, n.12, 56 L. Ed. 2d 468, 474, n.12 (1978). The Court further stated that the presumption is "better characterized as an 'assumption' that is indulged in the absence of contrary evidence." *Id.*

In the case before our Court, the trial court instructed the jury before the trial began not to "form any opinion about the guilt or innocence of the defendant." Defendant cited no cases showing that such an instruction constitutes an error. Thus, we hold that this instruction by the trial court did not amount to plain error. Accordingly, defendant's argument is overruled.

[3] Defendant next agues in assignment of error number eight that the trial court lacked jurisdiction to enter judgment convicting defendant of conspiracy to commit robbery. Defendant asserts that because he was fifteen years old at the time the alleged conspiracy was committed, he was subject to prosecution only pursuant to the North Carolina Juvenile Code as codified in N.C. Gen. Stat. § 7B-100 et seq. (2003). Defendant argues that the trial court did not properly obtain jurisdiction pursuant to the Juvenile Code.

The Juvenile Code provides that the district court "has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be delinquent. For purposes of determining jurisdiction, the age of the juvenile at the time of the alleged offense governs." N.C. Gen. Stat. § 7B-1601(a) (2003). *See also* N.C. Gen. Stat. § 7B-1501(4) (2003) (defining court as "[t]he district court division of the General Court of Justice."). Further, N.C. Gen. Stat. § 7B-2200 (2003) provides the following as the procedure regarding transfer from district to superior court:

After notice, hearing, and a finding of probable cause the court may, upon motion of the prosecutor or the juvenile's attorney or upon its own motion, transfer jurisdiction over a juvenile to superior court if the juvenile was 13 years of age or older at the time the juvenile allegedly committed an offense that would be a felony if committed by an adult. If the alleged felony constitutes a Class A felony and the court finds probable cause, the court shall transfer the case to the superior court for trial as in the case of adults.

"The superior court may obtain subject matter jurisdiction over a juvenile case only if it is transferred from the district court according to the procedure [N.C. Gen. Stat. § 7B-2200] prescribes." *State v. Dellinger*, 343 N.C. 93, 96, 468 S.E.2d 218, 220 (1996).

In the case before this Court, two juvenile petitions, one alleging murder and the other alleging attempted armed robbery, were filed in district court. The trial court found probable cause that defendant committed these offenses and ordered that these offenses be transferred to superior court. Subsequently, defendant was indicted and found guilty of first degree murder, attempted armed robbery, and conspiracy to commit armed robbery. Prior to the indictments in superior court, no petition had been filed in district court regarding the conspiracy charge. Defendant argues that the district court never exercised jurisdiction over defendant for this charge, and consequently, the superior court did not obtain jurisdiction over this charge by transfer pursuant to N.C. Gen. Stat. § 7B-2200. However, N.C. Gen. Stat. § 7B-2203(c) (2003) states that when a juvenile case is transferred to superior court, "the superior court has jurisdiction over that felony, any offense based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan of that felony[.]" The offense of conspiracy to commit armed robbery fell within the transaction related to the felony charge of armed robbery that was transferred from district court to superior court. Therefore, the superior court also had jurisdiction over the offense of conspiracy to commit armed robbery under N.C.G.S. 7B-2203(c). Accordingly, we affirm defendant's conviction for conspiracy to commit armed robbery.

**[4]** Defendant next argues in assignment of error number thirty that the trial court erred in failing to arrest judgment on the attempted armed robbery offense where that offense served as the underlying felony for defendant's felony murder conviction. We note that the State concedes the trial court erred.

"When a defendant is convicted of felony murder only, the underlying felony constitutes an element of first-degree murder and merges into the murder conviction." *State v. Millsaps*, 356 N.C. 556, 560, 572 S.E.2d 767, 770 (2002). "In accordance with the state and federal prohibitions against double jeopardy, our Supreme Court firmly established that 'a defendant may not be punished both for felony murder and for the underlying, "predicate" felony, even in a single prosecution.' " *State v. Coleman*, 161 N.C. App. 224, 234, 587 S.E.2d 889, 896 (2003) (quoting *State v. Gardner*, 315 N.C. 444, 460, 340 S.E.2d 701, 712 (1986)). Because the underlying felony merges into the murder conviction, "any judgment on the underlying felony must be arrested." *Coleman*, 161 N.C. App. at 234, 587 S.E.2d at 896.

In the case before us, defendant was convicted of first degree murder based on the fact that the killing occurred during an attempted armed robbery. Defendant was also convicted of attempted armed robbery. The trial court erroneously imposed sentences for both the murder conviction and the attempted armed robbery conviction. Accordingly, judgment is arrested on defendant's conviction of attempted armed robbery. *See State v. Gillis*, 158 N.C. App. 48, 58-59, 580 S.E.2d 32, 39, *disc. review denied*, 357 N.C. 508, 587 S.E.2d 887 (2003); *State v. Ocasio*, 344 N.C. 568, 581, 476 S.E.2d 281, 288 (1996).

[5] Defendant next argues in assignment of error number one that the trial court erred in entering judgment convicting him of first degree murder because the indictment was insufficient to allege the elements of felony murder. Defendant maintains the trial court violated his federal and state constitutional rights under U.S. Const. amends. V, VI, VIII, and XIV and N.C. Const. art. I, §§ 18, 19, 22, 23, 24 and 27.

Defendant cites two cases in recognition that our Supreme Court has upheld the use of short-form indictments. However, defendant contends that the "cases do not address the specific issue presented here—whether an indictment alleging an unlawful, willful and felonious killing with malice aforethought provides sufficient notice . . . to charge a defendant with felony murder." Our Supreme Court "has consistently held that the 'short-form indictment is sufficient to charge a defendant with first-degree murder.' " *Coleman*, 161 N.C. App. at 236, 587 S.E.2d at 897 (quoting *Barden*, 356 N.C. at 384, 572 S.E.2d at 150). Contrary to defendant's assertion, our Supreme Court has addressed the very same issue. *See State v. Avery*, 315 N.C. 1, 12-14, 337 S.E.2d 786, 792-93 (1985) (holding that an in-

dictment alleging that the defendant "unlawfully, willfully and feloniously and of malice aforethought did kill and murder" the victim was "sufficient to charge first degree murder without specifically alleging premeditation and deliberation or felony murder."). Accordingly, defendant's argument is overruled.

**[6]** Finally, defendant argues in multiple assignments of error that he received ineffective assistance of counsel. "To establish ineffective assistance of counsel, defendant must satisfy a two-prong test which was promulgated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)." *State v. Thomas*, 350 N.C. 315, 328, 514 S.E.2d 486, 495, *cert. denied*, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999). "[A] defendant must show that his counsel's assistance was so deficient that counsel was not 'functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,' and that counsel's deficient performance deprived him of a fair trial." *State v. Lawson*, 159 N.C. App. 534, 543, 583 S.E.2d 354, 360 (2003) (quoting *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693).

Defendant argues that there are multiple errors that his trial counsel made at trial that either singularly or collectively amounted to ineffective assistance of counsel. He argues that trial counsel (1) failed to object to the first degree murder and conspiracy indictments; (2) failed to take appropriate action to preserve any record of the juvenile court proceedings and failed to preserve defendant's right to appeal the district court proceedings; (3) failed to adequately prepare for trial or to adequately present a defense; and (4) failed to present a defense that was supported by the law.

N.C. Gen. Stat. § 15A-1419(a)(3) (2003) "requires a defendant to raise on direct appeal 'those [ineffective assistance of counsel] claims on direct review that are apparent from the record.'" *Lawson*, 159 N.C. App. at 544, 583 S.E.2d at 361 (quoting *State v. Hyatt*, 355 N.C. 642, 668, 566 S.E.2d 61, 78 (2002), *cert. denied*, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003)). Pursuant to this statute, "it is likely that counsel will err on the side of bringing claims for ineffective assistance of counsel on direct review even when they cannot be accurately determined at such a stage." *Lawson*, 159 N.C. App. at 544, 583 S.E.2d at 361.

" '[Ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be devel-

oped and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.' " *State v. Daniels*, 164 N.C. App. 558, 564, 596 S.E.2d 256, 259-60 (2004) (quoting *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002)).

On this record, we conclude that there is inadequate evidence of ineffective assistance of counsel for our Court to review the issue on appeal. Accordingly, we dismiss defendant's ineffective assistance claim, without prejudice, so that defendant may file a motion for appropriate relief before the trial court. *See Daniels*, 164 N.C. App. at 564, 596 S.E.2d at 260.

Judgment arrested in 01 CRS 001020, the attempted armed robbery conviction.

Judgment affirmed in 01 CRS 001019, the conspiracy to commit armed robbery conviction.

Affirmed in part; dismissed in part; arrested in part.

Judges CALABRIA and STEELMAN concur.