STATE OF NORTH CAROLINA v. CARLOS ANTONIO LAWSON

No. COA02-1000

(Filed 5 August 2003)

**1. Identification of Defendants— show up—no plain error**

The admission of identification testimony at an armed robbery prosecution was not plain error where a clerk at the store identified defendant in a show-up, which is disfavored, but there was no substantial likelihood of irreparable misidentification under the totality of the circumstances. Since the out-of-court identification was admissible, there is no danger that it impermissibly tainted the in-court identification.

**2. Evidence— videotape—convenience store robbery—foundation—no plain error**

The admission of a videotape at an armed robbery prosecution was not plain error where the clerk present at the convenience store during the robbery testified that the store was equipped with cameras, that the manager had properly loaded the recorder, and that the tape accurately depicted the robbery. Moreover, defendant could not show that the tape had a probable impact on the verdict given the overwhelming evidence of guilt; in fact, defendant used the tape at trial and it may have helped his case.

**3. Evidence— officer's testimony—defendant as liar**

There was no plain error in an armed robbery prosecution in the admission of portions of an officer's testimony about defendant giving false information about his identity. The officer's testimony dealt with the reasons for the officer's sus-

picion and his initial arrest of defendant for providing fictitious information. These were not district attorney's comments, nor was the officer invading the province of the jury or commenting on the credibility of a witness.

**4. Constitutional Law— effective assistance of counsel— record not sufficiently developed for some claims—others overruled**

Some of an armed robbery defendant's claims for ineffective assistance of counsel were dismissed without prejudice so that he could file a motion for appropriate relief in the trial court. Other claims involved issues decided elsewhere in the opinion and were overruled.

Appeal by defendant from judgments entered 28 March 2002 by Judge Dwight L. Cranford in Superior Court, Pitt County. Heard in the Court of Appeals 24 April 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Neil Dalton, for the State.*

*Jeffrey Evan Noecker, for defendant-appellant.*

McGEE, Judge.

Carlos Antonio Lawson (defendant) was convicted of robbery with a firearm and possession of a handgun by a felon on 28 March 2002. The trial court sentenced defendant to a minimum term of 103 months to a maximum term of 133 months active imprisonment for robbery with a firearm and a minimum term of 20 months to a maximum term of 24 months active imprisonment for possession of a handgun by a felon, to run consecutively. Defendant appeals.

The State's evidence at trial tended to show that on 4 November 2001, Anthony Johnson (Johnson) was working as a clerk at a Pantry in Grifton, North Carolina. Johnson was sitting behind the counter around 10:00 p.m., with his head down. When he looked up, there was a gun pointed at his face and he saw the gunman and another man in the store. The gunman had a slim build and was wearing bluish green coveralls, white tennis shoes, a black toboggan, and a blue bandana with little white diamonds. The bandana covered the lower part of the gunman's face. The other man was taller than the gunman and had a heavier build, was wearing a blue Adidas jacket with white stripes, and had a mask over his face.

Both men, cursing at Johnson, demanded money from the cash register. Johnson was scared and had trouble opening the register. Johnson testified that he looked right at the gunman because he was too scared to look elsewhere. When Johnson got the register open, he gave all of the money in the register, approximately $75.00, to the two men. Johnson was told to lie on the floor. Both men then ran from the store. The entire robbery lasted approximately twenty-five seconds. After the two men left the store, Johnson called the police and ran outside.

A witness, who was standing across the street from the Pantry at the time of the robbery, testified that he saw two men run from the Pantry. He testified that one of the men was dressed in a dark jumpsuit and was wearing white tennis shoes and that the other man was wearing a dark colored coat with white stripes down the sleeves. The witness identified an Adidas jacket seized from defendant's car, as the type of coat he saw one of the men wearing the night of the robbery.

Approximately two hours after the robbery, Officer C.L. Wilson (Officer Wilson), of the Kinston Police Department, stopped a car for running through a stoplight. The driver of the car, later identified as defendant, was wearing a jumpsuit and white sneakers. There were two passengers in the car with defendant. Officer Wilson testified that defendant was very nervous and that when Officer Lawson asked for defendant's driver's license, defendant could not produce it or other identification. Defendant claimed he had a North Carolina driver's license and gave the name "Antonio Lawson" and a date of birth. Officer Wilson ran a DMV information check for the name "Antonio Lawson," but the search returned no record of information on "Antonio Lawson." Officer Wilson testified that because he could not get DMV information on his computer for the name "Antonio Lawson," he "knew that [defendant] was lying" because if someone had ever had a North Carolina identification, it would be recorded in DMV's records.

During the stop, a report of an armed robbery in Grifton came over the police radio describing two black males, one of whom was wearing a blue coverall jumpsuit. Officer Wilson called for backup since the description matched defendant. While the name "Antonio Lawson" produced no results in the DMV search, information for the name "Carlos Antonio Lawson," with another date of birth did appear. Officer Wilson asked defendant if he was in fact Carlos Antonio

Lawson. Defendant denied that he was and never gave Officer Lawson his correct name.

Other officers searched defendant's car and recovered a blue Adidas jacket and two black toboggans from the trunk. No gun was found in the car. A blue bandana was later found near the Pantry.

Defendant and his passengers were taken to the Grifton police station. Johnson was brought to the Grifton police station. Johnson testified that when he saw defendant at the police station, he was wearing the same jumpsuit and white tennis shoes he had on during the robbery, but that defendant was now wearing the jumpsuit with the upper half unzipped and the sleeves tied at his waist with a tee shirt underneath. Johnson also testified that when he looked through the window into the room where defendant was being held, defendant stood up, came to the door and in a face-to-face exchange, said to Johnson, "Yo, man, tell them it won't me. They got the wrong m-----f----- man." Johnson testified that he recognized the voice of defendant as that of the robber. Johnson also testified that besides defendant's clothes and voice, he recognized defendant's eyes and his face from the nose up, which had not been covered by a bandana during the robbery. Johnson testified that "I mean when somebody has got a gun in your face . . . you're too scared to look anywhere else, so you are sitting right there looking right at their face in their eyes. . . . you don't forget his eyes." Johnson also testified, "[l]ike I said it's hard to forget somebody who puts a gun in your face."

A videotape and photographs of the armed robbery were admitted into evidence and viewed by the jury without objection. Johnson testified that the Pantry was equipped with two video cameras which fed into one recorder; that the Pantry's manager had loaded the recorder with videotapes, and that the recorder was properly working and that the videotape accurately depicted the robbery. Officer Chapman testified that he obtained the videotape from the Pantry the night of the robbery and turned it over to Deputy Pollock. A Deputy Pollock did not testify. However, Deputy Pollard did testify but did not testify as to the chain of custody of the videotape. During closing arguments, defense counsel used the videotape to argue: (1) that the robber was seen touching several things in the store, including the cash register, but no prints were found (T. p. 252) and (2) that the robbery only lasted twenty-five seconds and Johnson was lying on the floor, looking down, and looking at the cash register, for a portion of that time and thus had little time to look at the robber. Defendant presented no evidence.

I.

**[1]** Defendant argues the trial court erred by admitting evidence of both the in-court and out-of-court identification of defendant by Johnson. Defendant did not object to either of the identifications at trial and thus argues these errors amounted to plain error. Plain error is an error which is " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (citations omitted). The Courts in our State have applied the plain error rule to the admission of evidence. *State v. Black*, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806 (1983).

Defendant first argues that the show-up identification procedure used by the police resulted in a substantial likelihood of misidentification of defendant as the robber. If defendant can show the pretrial identification procedures were so suggestive as to create a substantial likelihood of irreparable misidentification, the identification evidence must be suppressed. *State v. Grimes*, 309 N.C. 606, 609-10, 308 S.E.2d 293, 294-95 (1983). While show-up style identifications are disfavored, they "are not *per se* violative of a defendant's due process rights." *State v. Turner*, 305 N.C. 356, 364, 289 S.E.2d 368, 373 (1982). We use a totality of the circumstances test in making this determination. *State v. Fisher*, 321 N.C. 19, 23, 361 S.E.2d 551, 553 (1987). The factors to be considered in this inquiry are:

> (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and confrontation.

*State v. Powell*, 321 N.C. 364, 369, 364 S.E.2d 332, 335, *cert. denied*, 488 U.S. 830, 102 L. Ed. 2d 60 (1988).

In the present case, the robbery lasted approximately twenty-five seconds and defendant stood immediately in front of Johnson with a gun pointed at Johnson's face. Johnson testified that he looked right at defendant during the robbery, taking special notice of defendant's eyes. Johnson gave a description of defendant, acknowledging that although a bandana was covering the lower part of defendant's face, he recognized defendant's eyes, nose, and distinctive forehead. Defendant also gave other descriptions of defendant's clothing and a

comparative description of the other man in the store during the robbery, as well as the gun used in the robbery. Defendant was arrested while wearing a jumpsuit and white tennis shoes like Johnson had described. Further, black toboggans and a blue Adidas jacket were found in the trunk of defendant's car.

Upon seeing defendant at the police station, Johnson was certain that defendant was the man who had held him at gunpoint in the Pantry. Defendant also spoke to Johnson, giving Johnson a chance to hear defendant's voice and compare it to the voice of the gunman from the Pantry. At the time of the identification, only a few hours had passed since the robbery. We also note another indicia of reliability of the identification by Johnson. When Johnson looked through the window where defendant was being held, defendant immediately came forward and pleaded with Johnson not to identify him and to tell the police they had the wrong man, indicating defendant knew Johnson was the clerk he robbed, which is a proper consideration in the totality of the circumstances test.

Based on the totality of the circumstances, we do not believe there was a substantial likelihood of irreparable misidentification and thus evidence of the out-of-court identification was admissible. Since the out-of-court identification was admissible, there is no danger it impermissibly tainted the in-court identification. *Grimes*, 309 N.C. at 609-10, 308 S.E.2d at 294-95. Therefore, Johnson's in-court identification of defendant was admissible. Defendant has failed to show plain error and his first argument is overruled.

II.

[2] Defendant next argues that the trial court erred by admitting into evidence a videotape where the evidentiary foundation was insufficient. Defendant did not object to the admission of the videotape into evidence and therefore we apply the plain error test. *See Black*, 308 N.C. at 740-41, 303 S.E.2d at 806. As discussed above, plain error is an error which is " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *Collins*, 334 N.C. at 62, 431 S.E.2d at 193 (citations omitted).

In order to lay a proper foundation for the introduction of the videotape, the State could have used

"(1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes);

(2) 'proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . .'; (3) testimony that 'the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing,' (substantive purposes); or (4) 'testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed.' ' "

*State v. Smith*, 152 N.C. App. 29, 38, 566 S.E.2d 793, 800, *cert. denied*, 356 N.C. 311, 571 S.E.2d 208 (2002) (quoting *State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990)).

Johnson testified that the Pantry was equipped with two video cameras which fed into one recorder, that the Pantry's manager had loaded the recorder with videotapes, and that the videotape accurately depicted the robbery. This testimony would be sufficient to survive an objection to the videotape's admission into evidence on the basis of the fourth prong above, "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed.' " *Id.*

Even assuming, *arguendo*, that defendant could have prevailed on an objection to the admission of the videotape at trial, under the plain error rule defendant must show that the admission of the videotape had a probable impact on the verdict of the jury. *See Black*, 308 N.C. at 740-41, 303 S.E.2d at 806. Given the overwhelming evidence of guilt in the record, defendant cannot meet this burden. In fact, as shown by defendant's own use of the videotape at trial, it is possible that the videotape actually helped defendant's case. This is not a case where the plain error test has been met. Defendant's second argument is overruled.

III.

[3] Defendant next argues that the trial court erred in admitting the portions of Officer Wilson's testimony wherein Officer Wilson intimated defendant was a liar. Defendant did not object to the admission of this testimony, and we apply plain error review. *See Black*, 308 N.C. at 740-41, 303 S.E.2d at 806.

The relevant testimony is as follows:

[Officer]: I asked him for his driver's license or ID. He told me he didn't have them on him so I asked him for his name and his

date of birth and he gave me the name of Antonio Lawson and a date of birth. I asked him had he ever had a North Carolina ID or a North Carolina driver's license and he stated that he had. I told him that I would be right back with him. . . . I ran the information and it came back with no information for DMV records of North Carolina.

Q: No information on Antonio Lawson?

[Officer]: With that DOB, yes, sir. At that point I knew that he was lying to me because if you've ever had a North Carolina ID whether it be three days ago, three years ago, thirty years ago, your information is in DMV files. With that name and that DOB there was no information. He had already stated to me that he had a North Carolina ID so I knew at that point that he was lying.

Q: What happened then?

[Officer]: While we [were] standing there talking about it, I told the deputy it came up with no information, I felt like he was lying to me. . . . I went back up there and proceeded to talk to Mr. Lawson to see if I could get the right date of birth. I told him, I said, "Look, I know you are lying to me. Do you just not have [a] license or are you just lying about that you don't have [a] license?" He said, "No, that is me." I had heard the name Carlos Antonio Lawson before. . . . I asked him, I said are you sure your name is not Carlos Antonio Lawson? "No, sir, that is not me." They came back and told me they didn't have an Antonio Lawson with that name and DOB but they did have a Carlos Antonio Lawson with a different DOB, and that was another reason why I asked him are you sure this isn't you, and he said "No, that is not me." We got our communications center to make contact with Grifton and they advised Grifton what we had, where we had the vehicle stopped, described it, the people we had in the vehicle, they asked us if we could detain them. Well I had enough with the fictitious information. Even though I hadn't gotten a real name yet I had enough fictitious information because I knew he was lying.

Q: You mean to charge him with fictitious information?

[Officer]: I did. So we got them out one at a time, told them that they were being detained, told them why, we asked for a consent to search the vehicle for any weapons or anything, and we sat

them all on the curb. . . . I stayed with Mr. Lawson and tried to get the right name and the right information, and I was not able to do so. He never gave me the right name or information.

We note that in contrast to defendant's contentions on appeal, Officer Wilson did not characterize defendant as "a liar." In reviewing the testimony, it appears instead that Officer Wilson's testimony as to defendant's lying dealt with: (1) the special circumstances of asking for defendant's identification during a traffic stop, (2) why defendant's responses aroused Officer Wilson's suspicion, and (3) explaining why Officer Wilson initially arrested defendant for providing fictitious information.

Further, the present case can be distinguished from the cases defendant cites. In *State v. Locklear*, the district attorney characterized defendant as "lying" and "playing with a perjury count." 294 N.C. 210, 214-18, 241 S.E.2d 65, 68-70 (1978). The Supreme Court found these comments grossly inappropriate and noted that they perhaps violated the district attorney's ethical obligations as a lawyer. *Id.* In the present case, the statements are not from a district attorney, but from a testifying police officer. Further, even in cases where a district attorney makes such comments, they will only constitute plain error if grossly inappropriate. *State v. Jordan*, 49 N.C. App. 561, 569, 272 S.E.2d 405, 410 (1980). The statements by Officer Wilson were not of the same nature as those by the district attorney in *Locklear*, which focused on the reliability of the defendant's testimony in general and his actions in the courtroom. The statements by Officer Wilson centered directly around the purposes and rationale for Officer Wilson's conduct during a traffic stop and the subsequent arrest of defendant.

Defendant also cites *State v. Holloway*, 82 N.C. App. 586, 347 S.E.2d 72 (1986), which is also distinguishable from the case before us. In *Holloway*, expert witnesses testified that a State's witness was telling the truth. *Id.* at 587, 241 S.E.2d at 73. This Court held that such testimony constituted plain error as it invaded the province of the jury to determine the credibility of witnesses. *Id.* at 587, 241 S.E.2d at 73-74. In the present case, Officer Wilson's testimony was not that of an expert as to credibility; further, he was not invading the province of the jury as he was not commenting on the credibility of a witness. As noted above, Officer Wilson was testifying to the circumstances of the traffic stop and the reason for defendant's detention. The above testimony by Officer Wilson does not rise to the level of plain error. This argument is overruled.

**STATE v. LAWSON**

[159 N.C. App. 534 (2003)]

## IV.

**[4]** Defendant's final argument is that he received ineffective assistance of counsel. To establish a claim for ineffective assistance of counsel, the United States Supreme Court has held that a defendant must show that his counsel's assistance was so deficient that counsel was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's deficient performance deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). The statutorily enacted test in North Carolina for ineffective assistance of counsel mirrors this test. *See* N.C. Gen. Stat. § 15A-1443(a) (2001); *State v. Atkins*, 349 N.C. 62, 82-83, 505 S.E.2d 97, 127 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). Judicial review of counsel's performance must be highly deferential so as to avoid the prejudicial effects of hindsight. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694.

Defendant argues that there are five errors that his trial counsel made at trial that either singularly or collectively amounted to ineffective assistance of counsel. He argues that trial counsel: (1) agreed to waive indictment by a grand jury on the charge of possession of a firearm by a felon; (2) failed to move to sever the charges of robbery and possession of a firearm by a felon, thereby informing the jury that defendant had previously been convicted of a felony; (3) failed to object to evidence of Johnson's pre-trial and in-court identification of defendant; (4) failed to object to the introduction of the videotape of the robbery; and (5) failed to object to the testimony of Officer Wilson, who testified that defendant lied to him during a traffic stop by giving him the wrong name.

We note that the United States Supreme Court held in a recent decision that a defendant was not required to raise ineffective assistance of counsel claims on direct appeal in order to preserve the defendant's claims for collateral review. *Massaro v. United States*, 538 U.S. ——, 155 L. Ed. 2d 714 (2003). The Supreme Court reasoned that

> [e]ven meritorious claims would fail when brought on direct appeal if the trial record were inadequate to support them. Appellate courts would waste time and resources attempting to address some claims that were meritless and other claims that, though colorable, would be handled more efficiently if addressed in the first instance by the [trial] court on collateral review.

*Id.* at ——, 155 L. Ed. 2d at 721. The Supreme Court further reasoned that

> "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. . . . The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because counsel's alternatives were even worse. . . . Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial."

*Id.* at ——, 155 L. Ed. 2d at 720-21.

N.C. Gen. Stat. § 15A-1419(a)(3) requires a defendant to assert a claim for ineffective assistance of counsel or risk forfeiting state collateral review if such a claim should have been brought on direct review. *See State v. Hyatt*, 355 N.C. 642, 668, 566 S.E.2d 61, 78 (2002), *cert. denied*, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003); *State v. Fair*, 354 N.C. 131, 166-67, 557 S.E.2d 500, 524-25 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). The statute requires a defendant to raise on direct appeal "those [ineffective assistance of counsel] claims on direct review that are apparent from the record." *Hyatt*, 355 N.C. at 668, 566 S.E.2d at 78. While we recognize that N.C.G.S. § 15A-1419 is "not a general rule that any claim not brought on direct appeal is forfeited on state collateral review," *Fair*, 354 N.C. at 166, 557 S.E.2d at 525 (citations omitted), it is likely that counsel will err on the side of bringing claims for ineffective assistance of counsel on direct review even when they cannot be accurately determined at such a stage. *See Massaro*, 538 U.S. ——, 155 L. Ed. 2d 714 (2003). Thus, at risk of losing the right to collateral review in state court, a defendant is in effect required to assert ineffective assistance of counsel claims, and our Court then determines whether an ineffective assistance claim was brought prematurely before the claim can progress under state collateral review. *Fair*, 354 N.C. at 166, 557

S.E.2d at 524 (2001). We agree with the United States Supreme Court that such a procedure does not in reality foster efficient use of judicial resources. *See Massaro*, 538 U.S. at ——, 155 L. Ed. 2d at 721. We note this inconsistency; however, *Massaro* dealt with federal collateral proceedings under 18 U.S.C. § 2255, and therefore does not affect the requirement of a defendant to raise ineffective assistance of counsel claims that are apparent from the record to preserve them for state collateral review.

We cannot determine at this time defendant's claim for ineffective assistance of counsel on direct appeal as to (1) trial counsel's agreement to waive indictment by grand jury on the charge of possession of a firearm by a felon and (2) trial counsel's failure to move to sever the charges of robbery and possession of a firearm by a felon. *State v. Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985). We dismiss defendant's ineffective assistance of counsel claim as to those two grounds without prejudice so that defendant may file a motion for appropriate relief before the trial court.

The record is sufficient to enable our Court to rule on defendant's ineffective assistance of counsel claim as to the other three grounds asserted on direct appeal. *See Hyatt*, 355 N.C. at 62, 566 S.E.2d at 78. As to the failure to object to the identifications of defendant, we discussed above that such identification procedures were proper under the totality of the circumstances test. The evidence would have been admissible even if defendant's counsel had objected at trial. Therefore, defendant cannot show that his counsel's failure to object to the admission of the evidence of these identifications deprived defendant of a fair trial.

The failure of defense counsel to object to the introduction of the videotape likewise does not amount to ineffective assistance of counsel. Admitting the videotape into evidence can be classified as trial strategy on the part of defendant's counsel. Once in evidence, defendant's counsel used the videotape to show the man in the videotape touched several things in the Pantry, but that defendant's fingerprints were never found. He also used the videotape to illustrate the brevity of the robbery, attempting to show that Johnson had limited time to see defendant. We think that given the reasonable foundation laid by the State for the introduction of the videotape, as discussed above, and defendant's counsel's use of the videotape to illustrate several alleged weaknesses in the State's case, counsel's conduct does not rise to the level of ineffective assistance of counsel. *See State v. Fisher*, 318 N.C. 512, 532, 350 S.E.2d 334, 346 (1986).

As to Officer Wilson's testimony, as thoroughly discussed above, he was not testifying that defendant was a liar in general, nor was he attempting to destroy the credibility of defendant as a witness. We do not find that counsel's failure to object to such testimony deprived defendant of a fair trial.

Therefore, we overrule defendant's ineffective assistance of counsel claim in part, and dismiss it without prejudice in part, to file a motion for appropriate relief. *See Hyatt*, 355 N.C. at 62, 566 S.E.2d at 78.

No error in part, dismissed without prejudice in part.

Judges McCULLOUGH and LEVINSON concur.