An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1154

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

IN THE MATTER OF:

S.M., J.M.                              Johnston County
                                        Nos. 12 JA 135-36

Appeal by respondent from orders entered 17 July 2013 by Judge Resson Faircloth and 23 September 2013 by Judge Addie Harris Rawls in Johnston County District Court. Heard in the Court of Appeals 28 April 2014.

> *Holland & O'Connor, P.L.L.C., by Jennifer S. O'Connor, for Johnston County Department of Social Services, petitioner-appellee.*
>
> *Marie H. Mobley for guardian ad litem.*
>
> *Peter S. Wood for respondent-appellant mother.*

HUNTER, Robert C., Judge.

Respondent-mother appeals from orders (1) adjudicating her minor children J.M. ("Josiah")[1] and S.M. ("Susan") to be neglected and dependent juveniles, (2) maintaining the children

---

[1]Pseudonyms shall be used to protect the juveniles' privacy and for ease of reading.

in the custody of the Johnston County Department of Social Services ("DSS"), and (3) denying her motion for a new trial and/or for relief from the adjudication order pursuant to Rules 59 and 60 of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. §§ 1A-1, Rules 59(a), 60(b) (2013). We affirm.

<u>Procedural History</u>

DSS filed juvenile petitions on 30 August 2012, alleging that six-year-old Josiah and four-year-old Susan were neglected and dependent. A hearing on the petitions was held in May 2013. On 10 July 2013, respondent-mother's counsel, Brian Knott, moved to withdraw. The district court allowed the motion and appointed counsel Steven Walker to represent respondent-mother on 12 July 2013.

On 17 July 2013, the court entered adjudications of neglect and dependency for both Josiah and Susan. In its accompanying disposition order, the court continued the children in DSS custody and relieved the department of further efforts toward reunification with respondent-mother.

On 24 July 2013, respondent-mother filed in district court a motion styled "Motion for a New Trial (Rule 59); Alternative Motion for Relief (Rule 60 & N.C. Gen. Stat. § 7B-1000)[.]" Citing newly discovered evidence or, alternatively, ineffective

assistance by former counsel Knott, she asked the court to grant her a new hearing pursuant to N.C.R. Civ. P. 59(a)(4) and (6), or to set aside the adjudication and disposition orders pursuant to N.C.R. Civ. P. 60(b)(4) and (6).

The district court denied respondent's motion in open court after a hearing on 14 August 2013. On 15 August 2013, defendant filed notice of appeal from the court's ruling and from the 17 July 2013 adjudication and disposition orders. The court entered its written order denying defendant's motion for relief under Rules 59(a) and 60(b) on 23 September 2013.

### Respondent-Mother's Appeal

Respondent-mother does not challenge any aspect of the district court's adjudication and disposition orders. She instead contends the "court abused its discretion by denying [her] motion for a new adjudication hearing under Rule 60(b) and Rule 59." The basis for her claim is counsel Walker's discovery, in the DSS case file, of a report prepared by psychologist Dr. Milton Kraft,[2] who evaluated respondent-mother's live-in boyfriend, Mr. W., after Josiah and Susan alleged that he had sexually abused them. According to respondent-mother, Dr. Kraft found it "unlikely" that Mr. W. abused her children,

---

[2]The motion hearing transcript spells the surname "Craft."

and found it "possible" that respondent-father or his family had coached the children into making false accusations against Mr. W. In the event that Dr. Kraft's report was unavailable to counsel Knott at the time of the adjudicatory hearing, respondent-mother contends the report represents "newly discovered evidence" under Rule 59(a)(4) and Rule 60(b)(2). If Dr. Kraft's report was available, respondent-mother argues that counsel's failure to introduce it at the adjudicatory hearing violated her right to effective assistance of counsel, justifying relief from the adjudications of neglect and dependency under Rules 59(a)(9) and 60(b)(6).

## Standard of Review

We review a trial court's denial of a Rule 59(a) or Rule 60(b) motion only for abuse of discretion. *In re Will of Buck*, 350 N.C. 621, 625, 516 S.E.2d 858, 861 (1999) (Rule 59(a)); *In re E.H.*, __ N.C. App. __, __, 742 S.E.2d 844, 849 (2013) (Rule 60(b)), *disc. review improvidently allowed*, __ N.C. __, 754 S.E.2d 417 (2014). A court abuses its discretion only when its ruling is "manifestly unreasonable[.]" *Lovendahl v. Wicker*, 208 N.C. App. 193, 205, 702 S.E.2d 529, 537 (2010).

## Newly Discovered Evidence

Under N.C.R. Civ. P. 59(a)(4), "[a] new trial may be

granted to all or any of the parties and on all or part of the issues" based on "[n]ewly discovered evidence material for the party making the motion which he could not, with reasonable diligence, have discovered and produced at the trial[.]" N.C. Gen. Stat. § 1A-1, Rule 59(a)(4). Similarly, Rule 60(b)(2) provides that the trial court "may relieve a party . . . from a final judgment, order, or proceeding" on the basis of "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[3] N.C. Gen. Stat. § 1A-1, Rule 60(b)(2).

Based on respondent-mother's own allegations, the report prepared by Dr. Kraft does not qualify as "newly discovered evidence" for purposes of Rules 59(a)(4) or 60(b)(2). "In order for evidence to be 'newly discovered evidence' under these rules, it must have been in existence at the time of the trial, and not discoverable through due diligence." *Broadbent v. Allison*, 176 N.C. App. 359, 364, 626 S.E.2d 758, 763 (2006). In respondent-mother's motion filed 24 July 2013, counsel Walker reported discovering Dr. Kraft's report in the DSS case file following his appointment as substitute counsel. The motion

---

[3]Inasmuch as respondent-mother timely served her Rule 59(b) motion, the conditions for relief contemplated by Rule 60(b)(2) manifestly do not apply.

further averred that that Mr. W. "was aware of this conclusion by Dr. Kraft and . . . had informed respondent-mother of the results of his psychological evaluation."

Insofar as the report was in existence at the time of the May 2013 adjudication hearing, it was plainly obtainable through due diligence. A respondent in an abuse, neglect, or dependency proceeding may seek discovery from DSS pursuant to N.C. Gen. Stat. § 7B-700(a), (c) (2013).[4] Given respondent-mother's avowed awareness of the results of Mr. W.'s evaluation, her failure to seek this evidence from DSS pursuant to N.C. Gen. Stat. § 7B-700, or from Dr. Kraft himself by subpoena or otherwise, can hardly be characterized as due diligence. *See Waldrop v. Young*, 104 N.C. App. 294, 297, 408 S.E.2d 883, 885 (1991). Accordingly, we conclude that the district court did not abuse its discretion in denying relief pursuant to Rules 59(a)(4) and 60(b)(2).

## Ineffective Assistance of Counsel

Rules 59(a)(9) and 60(b)(6) allow the trial court to grant a new trial or relief from a judgment for "[a]ny . . . reason heretofore recognized as grounds for new trial[,]" or that

---

[4]Indeed, respondent-father's counsel informed the court that she had reviewed the DSS file on multiple occasions but concluded that Dr. Kraft's evaluation "wasn't of any consequence to me[.]"

otherwise "justif[ies] relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rules 59(a)(9), 60(b)(6). Despite the rules' expansive language, we have emphasized that a court should wield its authority thereunder "carefully and reluctantly" and only where necessary to avoid "'a palpable miscarriage of justice[.]'" *Boykin v. Wilson Med. Ctr.*, 201 N.C. App. 559, 561, 563, 686 S.E.2d 913, 915, 917 (2009) (Rule 59(a)(9)); *accord Vaglio v. Town and Campus Int., Inc.*, 71 N.C. App. 250, 255, 322 S.E.2d 3, 7 (1984) ("Courts have the power to vacate judgments . . ., yet they should not do so under Rule 60(b)(6) except in extraordinary circumstances and after a showing that justice demands it.").

Respondent-mother argues that counsel Knotts' failure to introduce Dr. Kraft's report into evidence at the May 2013 adjudicatory hearing violated her right to effective assistance of counsel. Inasmuch as Dr. Kraft found it "unlikely" Mr. W. had sexually abused Josiah and Susan, respondent-mother contends that his report would have vindicated her disbelief of her children's accusations. She points out that the district court cited her refusal to believe her children in its findings of fact supporting the adjudications of neglect and dependency.

Under N.C. Gen. Stat. § 7B-602(a) (2013), a parent has a right to counsel in an abuse, neglect, or dependency proceeding. "This right to counsel also includes the right to effective assistance of counsel." *In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 909, *appeal dismissed*, 363 N.C. 654, 686 S.E.2d 676 (2009). To establish a successful claim that counsel's assistance was ineffective, a parent must "show that counsel's performance was deficient and the deficiency was so serious as to deprive the represented party of a fair hearing." *In re Oghenekevebe*, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996). "Judicial review of counsel's performance must be highly deferential so as to avoid the prejudicial effects of hindsight." *State v. Lawson*, 159 N.C. App. 534, 543, 583 S.E.2d 354, 360 (2003). Moreover, "[a] parent must also establish [s]he suffered prejudice in order to show that [s]he was denied a fair hearing." *In re S.C.R.*, 198 N.C. App. at 531, 679 S.E.2d at 909.

Initially, we note there is no showing that respondent-mother ever provided the district court with a copy of Dr. Kraft's report; nor has she included the document in the record on appeal. *See generally Walker v. Penn Nat'l Sec. Ins. Co.*, 168 N.C. App. 555, 560, 608 S.E.2d 107, 110 (2005) ("[W]hen the

evidence is not in the record the matter is not reviewable.") (citation and internal quotation marks omitted); *see also* N.C.R. App. P. 9(a)(1)(e). The record does not indicate when the report was prepared or delivered to DSS. Nor does the record reveal the actual contents of the report. We are thus unable to assess Dr. Kraft's actual findings and conclusions or ascertain the evidence he relied upon in reaching his conclusions. Significantly, there is no allegation that Dr. Kraft ever interviewed Josiah or Susan about the alleged sexual abuse, or that he spoke with witnesses other than Mr. W.

Moreover, "the purpose of the adjudication hearing is to adjudicate 'the existence or nonexistence of any of the conditions alleged in a petition.'" *In re A.B.*, 179 N.C. App. 605, 609, 635 S.E.2d 11, 15 (2006) (quoting N.C. Gen. Stat. § 7B-802). Accordingly, we have barred consideration of "post-petition evidence" at the adjudicatory stage of an abuse, neglect, or dependency proceeding. *Id.* In the case *sub judice*, the issue before the court at adjudication was Josiah's and Susan's status as neglected and dependent juveniles at the time DSS filed its petitions on 30 August 2012. Given that DSS did not allege sexual abuse by Mr. W. in support of its allegations of neglect and dependency, Dr. Kraft's evaluation of Mr. W.

subsequent to the petitions' filing was not obviously germane to the proceeding.

Based on respondent-mother's limited proffer, we cannot conclude that her counsel's failure to adduce Dr. Kraft's report at the adjudicatory hearing amounts to ineffective assistance of counsel. DSS did not seek adjudications of abuse or allege that Josiah and Susan had been sexually abused. As shown below, the adjudications of neglect and dependency were based on several factors, including respondent-parents' mutual history of domestic violence and violation of domestic violence protective orders, Mr. W.'s threatening behavior toward respondent-father and the children's caretaker, Ms. T., and respondent-father's volatility and deteriorating mental health.

In support of its adjudication, the district court found, *inter alia*, as follows:

> 7. . . . [T]he parents engaged in multiple incidents of domestic violence in the presence of the children. . . .
>
> 8. [Respondent-]mother used a wire hanger to discipline the juvenile, [Josiah], when he was a toddler, which left marks on the juvenile that remain to date.
>
> 9. In April of 2012, the mother enlisted the help of . . . [Mr. W.] to separate from [respondent-father]. . . .
>
> 10. In June of 2012, the parties separated.

. . .

11.     Thereafter the mother obtained a Domestic Violence Protective Order ("DVPO") due to [respondent-father's] threats, including threats of harming her or having her deported.  As part of the [DVPO], the mother was given temporary custody of the minor children.  . . .

12. The mother quit her job so that she could be with the children.  . . .

13. After approximately four days, [respondent-]mother and the minor children went to stay at the residence of [Mr. W.] and his roommate.

14. While at the home of Mr. [W.], both children reported that Mr. [W.] touched them inappropriately.  Both children disclosed that Mr. [W.] put his hand down their pants and touched their "privates".  . . .  Both children further disclosed that while Mr. [W.] was touching [Susan], [Josiah] jumped on him and Mr. [W.] punched [Josiah] in the stomach.

15. The children further observed the mother drinking while they were staying at Mr. [W.]'s apartment.  . . .

16.  On July 19, 2012, [Josiah] telephoned his father and told him something bad had happened but before he could explain, the mother hung up the phone.

17.  On July 20, 2012, [the children's adult sister, Ms. T.,] went to pick up the children for their . . . visitation with the father.  Mr. [W.] was at the exchange and attempted to prevent the children from going on the visit.  Once at the father's residence, the children disclosed to the

father and their sister the physical and sexual assault by Mr. [W.]

18. [Respondent-father] obtained a DVPO against the mother and obtained custody of the children.

. . . .

20. After the DVPO was put in place in late July, 2012, both parties continued to violate the no contact provision. . . .

. . . .

22. The children went to stay with their sister, [Ms. T.] in August of 2012, with the father's consent. . . .

23. On or about August 10, 2012, [respondent-father], while intoxicated, contacted the mother and threatened her and threatened to kill himself. . . .

24. Although the mother was advised of the children's disclosure against Mr. [W.], she continued to maintain a relationship with him, including up to the time of the filing of the juvenile petitions. [Respondent-mother] was further aware of Mr. [W.]'s mental health past that resulted in a previous hospitalization. . . . Mr. [W.] has further provided the mother financial support and assistance with remaining in the country.

25. Although the mother believes her children are truthful, she refused to believe their disclosures against Mr. [W.]

26. [Respondent-father] believed he was being followed by Mr. [W.] and that he was receiving threatening phone calls from Mr. [W.] . . . Both [respondent-father] and

[Ms. T.] observed Mr. [W.] in a vehicle out front of [respondent-father's] home and observed Mr. [W.] point a gun at them.

27. In mid to late August 2012, the father threatened to take the children from Ms. [T.] and take them to see their mother in Raleigh, North Carolina, in violation of the safety assessment entered into by [DSS].

28. On or about August 24, 2012, [respondent-father] again threatened to take the children from Ms. [T.] After Ms. [T.] refused to give the children to [respondent-father], he grabbed Ms. [T.] and threatened to kill her.

. . . .

30. [Respondent-father]'s mental health became noticeably concerning as the month of August progressed. Ms. [T.], his daughter, and [DSS] became fearful of his mental health status.

. . . .

32. [On August 30, 2012], the father purposely overdosed on his medication and had to be hospitalized.

33. The children were originally placed in the nonsecure custody of [Ms. T.], but had to be moved due to threats by Mr. [W.], as well as [respondent-father] coming to the home in violation of the order. No other alternative placement was available for the children and they were placed in foster care.

Based on these facts, the court determined that Josiah and Susan

"lived in an environment injurious to their health and welfare

and further were at a substantial risk of physical and/or emotional impairment if returned to the care of either parent." *See* N.C. Gen. Stat. § 7B-101(15) (2013) (defining "neglected juvenile"). The court further found "that neither parent was able to provide proper care and supervision and lacked an appropriate alternative care arrangement." *See* N.C. Gen. Stat. § 7B-101(9) (2013) (defining "dependent juvenile").

Respondent-mother does not challenge any finding of fact or conclusion of law in the adjudication and disposition orders entered on 17 July 2013. Unchallenged findings of fact are binding on this Court. *In re S.N., X.Z.*, 194 N.C. App. 142, 147, 669 S.E.2d 55, 59 (2008), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009). These unchallenged findings fully support the conclusion that Josiah and Susan were neglected and dependent juveniles, irrespective of the truth of their sexual abuse allegations. Moreover, the fact that respondent-mother dismissed their allegations and remained with Mr. W. – well before his evaluation by Dr. Kraft – was properly considered by the court in assessing the extant risks to the children.

Respondent-mother has not shown she was prejudiced by counsel's failure to introduce Dr. Kraft's report at the adjudicatory hearing. Accordingly, we find no abuse of

discretion by the district court in denying her motion for relief pursuant to Rule 59(a)(9) and 60(b)(4). *See In re L.C.*, 181 N.C. App. 278, 283, 638 S.E.2d 638, 641 (2007) ("Because respondent has failed to demonstrate the prejudice he suffered, he has likewise failed to establish his claim of ineffective assistance of counsel.").

## Remaining Issues

To the extent respondent-mother claims "excusable neglect" as a basis for relief under N.C.R. Civ. P. 60(b)(1), we find that she failed to present this issue to the district court and may not now "'swap horses between courts in order to get a better mount [on appeal].'" *Regions Bank v. Baxley Commercial Props., LLC*, 206 N.C. App. 293, 298-99, 697 S.E.2d 417, 421 (2010) (quoting *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996)); *see also* N.C.R. App. P. 10(a)(1).

We likewise reject respondent-mother's suggestion that the order denying her motion lacks sufficient findings of fact and conclusions of law and is impermissibly "vague." Because respondent-mother did not request the entry of findings and conclusions pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(a)(2), none were required. *Creasman v. Creasman*, 152 N.C. App. 119, 124, 566 S.E.2d 725, 729 (2002) ("A trial court is not required

to make written findings of fact when ruling on a Rule 60(b) motion, unless requested to do so by a party."); *Edge v. Metropolitan Life Ins. Co.*, 78 N.C. App. 624, 626, 337 S.E.2d 672, 674 (1985) (same for Rule 59(a)).

Finally, we find no merit to respondent-mother's argument that the district court erred by characterizing her claims under Rules 59 and 60 as "more appropriately classified as appellate issues" redressable under N.C. Gen. Stat. § 7B-1001 (2013).  The court also found "no evidentiary or factual basis to grant relief pursuant to Rule 59 or 60[.]"  "[A] correct decision of a lower court will not be disturbed because the reason assigned for it is wrong, insufficient, or superfluous. The question on review of the decision in this Court is whether the ruling of the court below was correct, not whether the reason given for it is sound or tenable."  *State v. Parker*, 316 N.C. 295, 302, 341 S.E.2d 555, 559 (1986).

Conclusion

Respondent-mother does not contest the adjudication and disposition orders entered on 17 July 2013.  The district court did not abuse its discretion in denying her Rule 59 and 60 motion.  Accordingly, we affirm each of these orders.

AFFIRMED.

Judges GEER and McCULLOUGH concur.

Recommend Report per Rule 30(e).