An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-962

Filed 5 November 2025

Lincoln County, Nos. 19 CR 052034-540, 19 CR 052035-540, 19 CR 052037-540, 19 CR 052038-540, 19 CR 052042-540, 20 CR 000332-540.

STATE OF NORTH CAROLINA

v.

LARRY WADE STANLEY II, Defendant.

Appeal by Defendant from judgment entered 15 November 2023 by Judge Robert C. Ervin in Lincoln County Superior Court. Heard in the Court of Appeals 27 August 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Daniel K. Covas, for the State.*

*Attorney Jarvis John Edgerton IV for Defendant–Appellant.*

MURRY, Judge.

Larry W. Stanley II (Defendant) appeals the trial court's admittance of a surveillance video at trial over his objection, arguing that the State failed to properly authenticate and lay a proper foundation for it. For the following reasons, this Court holds that the trial court did not err.

## I. Background

On 22 June 2019, Detective David Hendrix was dispatched to the Lincoln County Detention Center to investigate a fight between inmates and detention officers. By the time Detective Hendrix arrived, the fight had ended and all inmates were back in their cells. Detective Hendrix observed four detention officers self-treating injuries consistent with a fistfight, all of whom stated that they had been assaulted by Defendant and two other inmates. Later that day, Detective Hendrix obtained a surveillance video of the cell block where the fight broke out.

On 13 July 2020, a grand jury indicted Defendant for assault by strangulation, four counts of assault on a law-enforcement officer inflicting serious injury, and for obtaining habitual-felon status. On 12 June 2023, it indicted him for first-degree kidnapping. Following Defendant's not-guilty pleas, this matter came for trial on 13 November 2023.

At trial, Detective Hendrix testified to obtaining the video on the day of the fight as part of his investigation. When the State presented him with a copy of the DVD, he testified to recognizing it as the cell-block video and reviewing it for evidentiary value. He also stated that it accurately depicted the video as he had seen it on the day of the incident. Detective Hendrix identified Defendant in the video and confirmed that, although he did not witness the events firsthand, he still recommended Defendant's charges based on its recording.

Detective Dylan Houser, an additional investigator, also testified at trial.

Detective Houser had supervised IT projects and surveillance systems for the detention center since 2021 and recognized the recording as the fight video as a result. Based on his review earlier that day, Detective Houser determined that it was the video from the cell block, which had been transferred onto a DVD under standard procedure with timestamp data. He then explained the detention center's surveillance system:

> DETECTIVE HOUSER: The video camera surveillance system throughout the jail was an analog-based system [with] . . . cameras throughout our facility, including the cell[ ]blocks, . . . [with] CAT 6 cables that . . . transferred the data from the cameras throughout the jail to a central storage location to a digital video recorder.
>
> . . . .
>
> STATE: . . . The security cameras in the jail, are they date and timestamped?
>
> DETECTIVE HOUSER: They are.
>
> STATE: When someone downloads a copy of the security footage, are they able to alter those dates and timestamps?
>
> DETECTIVE HOUSER: They are not.
>
> STATE: So anyone extracting would not have the ability to change it?
>
> DETECTIVE HOUSER: They would not.
>
> STATE: Now, you reviewed that footage. Did you see anything . . . to suggest that [the] system was not fully in working order at the time it was downloaded?
>
> DETECTIVE HOUSER : I did not.

On voir dire, Detective Houser testified to finding no indication that the

camera malfunctioned at the time of the fight. When Defendant objected to Detective Houser's ability to lay a foundation for the video, the State countered that the "totality" of Detective Hendrix and Detective Houser's combined testimonies "corroborate[d] or authenticate[d]" the video. The trial court overruled Defendant's objection, admitted the video into evidence, and allowed the State to publish it to the jury. Defendant did not testify or offer evidence in his own defense.

On 14 November 2023, the jury acquitted Defendant of first-degree kidnapping but convicted him of misdemeanor simple assault and four counts of assault on a law enforcement officer inflicting serious injury. The trial court sentenced Defendant to a total of 160 months of active imprisonment. Defendant timely appealed.

## II.    Jurisdiction

This Court has jurisdiction over Defendant's appeal from a final judgment of the trial court under N.C.G.S. §§ 7A-27 and 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final judgment of trial court); *id*. § 15A-1444(a) (pled not guilty but found guilty).

## III.    Analysis

Defendant argues that the trial court erred by admitting the surveillance video into evidence because the State failed to properly authenticate and lay a foundation for it. For the following reasons, this Court holds that the trial court did not so err. Under N.C.G.S. § 8-97, a proponent may introduce a recorded video as substantive evidence upon (1) laying a proper foundation and (2) meeting other applicable

evidentiary requirements. *See* N.C.G.S. § 8-97 (2025).[1] As the proponent here, the State may lay a proper foundation in one of several methods through:

(1) Testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes);
(2) Proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape;
(3) Testimony that the videotapes introduced at trial were the same as those the witness had inspected immediately after processing (substantive purposes); or
(4) Testimony that the videotape has not been edited, and that the picture fairly and accurately records the actual appearance of the area photographed.

*State v. Lawson*, 159 N.C. App. 534, 539–40 (2003) (citation modified). The North Carolina Rules of Evidence (Rules) govern any additional procedures or requirements. *E.g.*, N.C. R. Evid. Rule 902 (self-authenticating documents) [hereinafter Rule]. The State may authenticate a recording for admission by offering "evidence sufficient to support a finding that the matter in question is what the proponent claims." *State v. Jones*, 288 N.C. App. 175, 187 (2023) (quoting Rule 901(a)). The State should describe "a process or system" by "showing that the process or system produces an accurate result," Rule 901(b)(9), such as a video "from an automatic surveillance camera as the accurate product of an automated process." *State v. Snead*, 368 N.C. 811, 814 (2016) (quotation omitted).

This Court has recognized in multiple cases that testimony verifying the

---

[1] Our precedents diverge on whether to review evidence authentication either "*de novo* or for an abuse of discretion." *State v. Windseth*, 298 N.C. App. 285, 288 n.1 (2025). Because the trial court did not err, though, we need not resolve this conflict now.

system's proper operation and the video's unedited condition since the day of its capture sufficiently authenticates the recorded evidence. In *State v. Fleming*, 247 N.C. App. 812, 817–18 (2016), this Court held that the State "adequately authenticated" a surveillance video by offering a police officer's testimony that "the surveillance video system . . . function[ed] properly at the time" of its capture, that its "images introduced at trial were unedited," and that they were the "images created by this system." Similarly, in *Jone*s, this Court held that the State "sufficiently authenticated" a surveillance video where the officer "testified multiple times" that the recording "was the same video that she had seen the night of the prior breaking and entering" and that the surveillance system worked properly "to her knowledge." 288 N.C. App. at 118.

The authentication burden under Rule 901 requires "only a *prima facie* showing" that "may be accomplished largely by offering circumstantial evidence." *State v. Ford*, 245 N.C. App. 510 (citation modified). So long as "the recording process is *reliable* and . . . the video introduced at trial is the *same video* that was produced by the recording process," then the State can "authenticate the video and lay a proper foundation for its admission as substantive evidence." *Snead*, 386 N.C. at 814 (citation modified); *see, e.g.*, *Jones*, 288 N.C. App. at 188 (applying *Snead*'s two-part test as governing principle for authentication of video).

Here, the State properly authenticated the surveillance video of Defendant's assaults. Detective Hendrix demonstrated that the video at trial was the "same" as

the one recorded on the date of the fight by testifying that it was the same video he had seen the day he downloaded it as part of his investigation. *See Snead*, 368 N.C. at 814. He also testified to collecting the video himself and not altering it in any way, which demonstrated the reliability of its recording process. *See id.* Detective Hendrix sufficiently authenticated and laid a proper foundation for the surveillance video in this manner. *See id.*

The State offered additional evidence of authentication through Detective Houser's recognition of the DVD as the same video he viewed in 2019. *See id.* He testified to working at the detention center's IT department at the time of the fight, finding no indication that the cameras did not work at that point, and knowing that each video contained inalterable timestamps. *Cf. id.* Detective Houser also authenticated and laid a proper foundation for the surveillance video under *Snead's* two-part test. Each witness's testimony independently satisfies the test, while taking them together further demonstrates that the State laid a proper foundation for the surveillance video. Thus, this Court holds that the trial court did not err by admitting it into evidence.

We further reject Defendant's argument for failure to show prejudice. *See* N.C.G.S. § 15A-1443(a) (2025) (defendant bears burden of showing prejudice). As the appellant, Defendant must "ensure that the record is complete and contains the materials asserted to contain error." *State v. Hall*, 187 N.C. App. 308, 324 (2007); *see* N.C. R. App. P. 9. Here, Defendant failed to submit a copy of the video in the record

on appeal. As a result, we are unable to examine the video to determine its potential prejudicial impact. *See Hall*, 187 N.C. at 324 ("This omission prevents this Court from determining whether the trial court erred . . . ."). Therefore, this Court holds that the trial court did not prejudicially err.

## IV.    Conclusion

For the reasons above, this Court holds that trial court did not err by admitting the surveillance video into evidence and that Defendant could not demonstrate prejudice.

NO ERROR.

Judges CARPENTER and GRIFFIN concur.

Report per Rule 30(e).